OPINION OF THE COURT
Charles H. Cohen, J.
Plaintiff, who describes himself as an investor, dealt in real estate. In April of 1976, he met defendant and engaged in certain real estate transactions with defendant. Thereafter, they dealt with one another concerning certain real property known as 224-11 144th Avenue, Springfield Gardens, Queens, New York.
Plaintiff testified that he “found” this property and discussed with defendant the possibility of selling it to defendant if the latter would pay plaintiff a “finder’s fee” of $3,000.
It appears that a form of contract dated May 7, 1976 for the purchase and sale of the property had been prepared, naming Miriam Kalenscher as seller and plaintiff as purchaser. At the request of plaintiff, defendant attended the contract closing. After defendant agreed to pay plaintiff the $3,000 finder’s fee, the typed name of the purchaser, *33 Bernard Feldbau, was crossed out and the name Klarnet Properties, Inc., a corporation, the stock of which was owned by defendant, was inserted as the purchaser. The contract of sale was signed by Kalenscher and by defendant on behalf of Klarnet Properties, Inc.
Plaintiff and defendant signed an agreement dated June 9, 1976, which reads as follows:
“it is hereby agreed, by and between Bernard feldbau, residing at 20-02 Seagirt Boulevard, Far Rockaway, New York, hereinafter referred to as the party of the first part and harold klarnet, residing at 160-17 Hillside Avenue, Jamaica, New York, hereinafter referred to as the party of the second part, as follows:
“The party of the first part has required [sic] the rights, title and interest to the premises known as 224-11 144th Avenue, Springfield Gardens, New York and has simultaneously assigned all his rights, title and interests to harold klarnet, pursuant to the terms and conditions of a certain contract dated the 7th day of May, 1976, made by and between miriam kalenscher and Bernard feldbau, the said Bernard feldbau being a designee of the party of the second part.
“It is agreed that for his services in obtaining the title or contract to the aforesaid premises that the party of the first part shall receive the sum of Three Thousand ($3,000.00) Dollars which shall be paid by the party of the second part when title shall close to the party of the second part pursuant to the terms and conditions of the aforesaid agreement, willful default on the part of the second party being specifically excluded.”
Thereafter, by deed dated September 19,1976, defendant personally acquired title to this property. When plaintiff learned of this fact, he demanded the $3,000 “finder’s fee”. Defendant asked that plaintiff wait until defendant sold the property. Plaintiff waited. Subsequently, plaintiff learned that defendant had sold the property and, again, asked that he be paid the $3,000. Defendant refused to do so stating that plaintiff was not a licensed real estate broker. Plaintiff, who, in fact, was not a licensed real estate broker, sues to recover this sum of $3,000 in his first cause of action.
*34 In a separate transaction, plaintiff sold defendant certain real property known as 153-24 88th Avenue, Jamaica, New York. Plaintiff loaned defendant the money with which to purchase this property and took a mortgage on the property. It appeared that defendant did not or could not pay for this property. Plaintiff and defendant then agreed that plaintiff would take back the property in satisfaction of the mortgage, with defendant agreeing to pay plaintiff $545 for real estate taxes which had apparently accrued on the property and were unpaid. Defendant signed the following statement which was written upon the bottom of the agreement dated June 9,1976: “July 25,1977 — In consideration of Bernard Feldbau releasing his lein (sic) of mtge. on premises 153-24 88th Ave I agree to pay an additional sum of $545.00 due and payable in addition to the above sum.”
At the same time, plaintiff delivered to defendant a printed form of general release dated July 25, 1977, in which plaintiff, in consideration of the stated sum of $1, released and discharged: “harold klarnet and/or klarnet properties, inc. the releasee, releasee’s heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the releasee, the releasor, releasor’s heirs, executors, administrators, successors and assigns ever had, now have or hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this release.” Immediately after the above-printed words of the general release there was typed the following: “The intent of this release is to release the party of the second part from any further obligation of the premises 153-24 88th Avenue Jamaica, New York, and for no other purpose.” The said sum of $545 was not paid by defendant to plaintiff and plaintiff seeks to recover that sum in his second cause of action.
*35 Defendant sets forth an affirmative defense with respect to both causes of action based upon the fact that plaintiff was not “a licensed real estate broker in the State of New York” and sets forth, with respect to the second cause of action, a defense of “General Release.” (Defendant also alleged an affirmative defense with respect to the first cause of action based in part upon a claim of duress but no proof was offered concerning this defense.)
DEFENSE THAT PLAINTIFF IS NOT A LICENSED REAL ESTATE BROKER
This defense is based upon section 442-d of the Real Property Law which reads as follows: “No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.”
This statute, which appears in article 12-A, entitled “Real Estate Brokers and Real Estate Salesmen”, is broadly worded. As far as it may be applicable to this case, it provides that “No person * * * shall bring or maintain an action *** for the recovery of compensation for services rendered * * * in the buying [of] * * * any real estate”.
Apparently, relying on the heading of section 442-d of the Real Property Law which is entitled “Actions for commissions; license prerequisite”, plaintiff seems to argue that since he is seeking to recover a “finder’s fee” and not a “commission,” he is not proceeding in violation of this statute. However, the heading cannot limit the effect of the clear language in the body of the statute itself. (Squadrito v Griebsch, 1 NY2d 471, 475.) The statute broadly covers “compensation for services rendered” regardless of what the pailies may call it.
Minichiello v Royal Business Funds Corp. (18 NY2d 521, 527, cert den 389 US 820) indicates that even if plaintiff were called a “finder” rather than a “broker,” the statute is *36 still applicable to him. That case involved the interpretation of subdivision 10 of section 31 of the Personal Property Law (the Statute of Frauds) as it was enacted in 1949 when it read as follows: “Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest.”
One of the questions in that case was whether that statute covered finders as well as brokers. The court considered the purpose of that statute and noted (p 527) that: “If, indeed, there is any definite distinction between finders and brokers, it would probably be in the quantity of services rendered by each. It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission.” It concluded that the Legislature intended to include finders within the meaning of the statute. (See, also, Intercontinental Planning v Daystrom, Inc., 24 NY2d 372, 378; Seidman v Dean Witter & Co., 70 AD2d 845; Murray Director Affiliates v Laventman, 70 Misc 2d 571.)
While the statute in Minichiello was concerned with a question of whether a finder claiming a commission was required to comply with the Statute of Frauds, it is significant that the statute there, as well as the statute here, involved the question as to whether one called a finder was a person seeking to recover “compensation for services rendered.” The determination of the Court of Appeals in Minichiello that a finder was included within the definition of one seeking to recover “compensation for services rendered,” supports the conclusion that a finder is included within those same words when used in section 442-d of the Real Property Law.
It is interesting to note that although plaintiff may have intended to buy the property himself and then assign his rights to defendant — the agreement dated June 9, 1976 even recites that this was done — the fact remains that plaintiff did not sign a contract to purchase the *37 property. He did not act as a principal; he acted as an agent. This was a matter of some significance since plaintiff himself never became bound to purchase the property from Kalenscher. He rendered services to defendant in the buying of the property and seeks, in his first cause of action, “the recovery of compensation for services rendered.” This falls within the ambit of section 442-d of the Real Property Law and plaintiff, therefore, may not maintain this cause of action.
The second cause of action is simply an action to recover a debt owing by defendant to plaintiff. While relating to real estate, it is not a cause of action “for the recovery of compensation for services rendered.” Accordingly, section 442-d of the Real Property Law is not a defense to the second cause of action.
DEFENSE OF RELEASE
Whether a release is general, barring all claims against the party released, depends upon the intention of the parties. (Mangini v McClurg, 24 NY2d 556; Murphy v City of New York, 190 NY 413.) Where the instrument contains general words of release but contains a recital of a particular claim, obligation or controversy, the general words are deemed to be limited to the particular claim, obligation or controversy. (Mitchell v Mitchell, 170 App Div 452; Matter of Quick, 147 Misc 28, 34.) This is particularly so where the general words of the release are part of a printed form and the words of limitation are typewritten on the form. (Feldman v Fiat Estates, 25 AD2d 750; Laurino v Hewman, 10 AD2d 725; Posner v United States Fid. & Guar. Co., 33 Misc 2d 653, 657, affd sub nom. Posner v New York Mut. Underwriters, 16 AD2d 1013.)
In this case, it is absolutely clear that the release was limited despite the broad general words in the printed form releasing “all actions, causes of action”. The release specifically declares in the typewritten portion that: “The intent of this release is to release the party of the second part from any further obligation of the premises 153-24 88th Avenue Jamaica, New York and for no other purpose.”
It is noted that the quoted paragraph states that it is intended to release “the party of the second part”. There is, *38 of course, no declaration in the release as to the identity of “the party of the second part”. However, the release dated July 25, 1977 was executed at the same time as the statement, also dated July 25, 1977, and placed at the bottom of the agreement dated June 9, 1976, in which defendant is described as “the party of the second part.” Under these circumstances, the court finds that “the party of the second part” mentioned in the release refers to the defendant.
The statement dated July 25, 1977, while somewhat inartistically worded, provides that defendant will pay $545 upon plaintiff releasing his lien on the 88th Ave. premises. Significantly, the release states that it was intended to release any “further” obligation and for “no other purpose.” The release must be construed in connection with the statement which was executed simultaneously with it. (Television Credit Corp. v International Tel. Corp., 279 App Div 561; Baka v Board of Educ., 11 Misc 2d 441, affd 8 AD2d 613.) Upon doing so, the court concludes that the release relates only to any obligation of defendant to plaintiff arising out of the 88th Avenue property other than the sum of $545, which is the subject matter of plaintiff’s second cause of action. Accordingly, the release is no defense to this cause of action.
CONCLUSION
The court directs judgment in favor of the defendant against the plaintiff on the first cause of action.
The court directs judgment in favor of the plaintiff against the defendant on the second cause of action in the amount of $545 with interest from July 25, 1977.