■ G.C. Fortune Management Company, Inc., Appellant, v Stockade Mobile Home Park, Inc., et al., Respondents. [667 NYS2d 489] —Peters, J. Appeal from a judgment of the Supreme Court (Conway, J.H.O.), entered April 29, 1997 in Saratoga County, upon a decision of the court in favor of defendants.

In 1988, Gerard Fortune contacted defendant Gloria N.

Wheeler, president and sole shareholder of defendant Stockade Mobile Home Park, Inc. (hereinafter Stockade), to ask whether she would consider selling the park. Although Wheeler initially refused, she ultimately expressed an interest in having Fortune manage, upgrade and increase its occupancy. Fortune was an experienced manager of mobile home parks, as Wheeler knew, and was also a co-owner with his brother, Ken Fortune, of GKF Enterprises, Inc., a mobile home dealer. Negotiations regarding the terms and conditions under which Fortune would provide management services for the park included his disclosure to Wheeler that he intended to charge and retain an entrance fee ranging from $1,500 to $5,000 to mobile home dealers for their placement of homes within the park.

On February 24, 1989, Stockade entered into an agreement with plaintiff, the incorporated entity through which Fortune would provide the desired services. The terms included, *inter alia*, that plaintiff was to be the "exclusive sales and rental agent" of Stockade, would increase the occupancy of the park to 98% by the end of the first three year term, and that the contract would be renewable, at plaintiff's sole option, for five successive three year terms, conditioned upon compliance with the occupancy requirements. Plaintiff was entitled to place new or "like-new" mobile homes on vacant sites rent-free for the initial three year period, to place signs advertising such sites, and to rent an existing house located at the park as a sales and rental office. Plaintiff, through Terrance Fortune (hereinafter the Park Manager), would provide on-site management services by allowing the Park Manager to live in his own mobile home on a rent-free site provided by Stockade. All other expenses and compensation paid to such Park Manager would be the responsibility of plaintiff. Finally, the agreement provided that plaintiff retained a 60-day right of first refusal to match any bona fide offer made to purchase the park or lease it for a term exceeding one year. It is uncontested that plaintiff successfully managed the park pursuant to this agreement until March 1990.

By letter dated March 23, 1990, plaintiff was notified that since it was not a licensed real estate broker, the agreement between it and Stockade was "null, void and/or cancelled in all respects". Advised to cease activities on behalf of the park, plaintiff terminated the Park Manager's services.* On December 4, 1990, however, Stockade and defendant George Koshgarian entered into a lease agreement, with a purchase option for

---

* The Park Manager remained at the park until May 1990 as an employee of Stockade.

the park, which included an indemnification agreement against any subsequent claim made by plaintiff. The purchase option was ultimately exercised, yet all was delayed pending the outcome of this litigation.

Plaintiff commenced this action alleging, *inter alia*, breach of contract, thus prompting defendants' counterclaim for unpaid rents. After a bench trial, both the complaint and counterclaim were dismissed upon a finding that the agreement was unenforceable due to illegality. Plaintiff appeals.

Real Property Law § 440-a requires that a party who engages in the business of a real estate broker be duly licensed. A real estate broker is defined as a person who for a "fee, commission or other valuable consideration, lists for sale * * * exchanges, buys or rents, or offers or attempts to negotiate a sale * * * exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate" (Real Property Law § 440 [1]; *see, Eaton Assocs. v Highland Broadcasting Corp.*, 81 AD2d 603). Due to the penal nature of such statute, it must be strictly construed and not made applicable " 'to cover * * * every transaction in which an interest in real estate may be part of the subject of transfer' " (*Reiter v Greenberg*, 21 NY2d 388, 392, quoting *Weingast v Rialto Pastry Shop*, 243 NY 113, 116).

According to the subject agreement, plaintiff was to be the "exclusive sales and rental agent" for Stockade, guaranteeing rental of 98% of the sites available by the conclusion of the first three year term. Plaintiff's Park Manager screened prospective tenants for Stockade, made recommendations concerning prospective tenants' credit-worthiness or character, delivered late notices to tenants who were in arrears on rent payments and occasionally collected rents and issued receipts. The agreement expressly provided that he was not to be considered an agent of Stockade in any respect. Looking to the "nature of the transaction" at issue (*Dodge v Richmond*, 5 AD2d 593, 595), we must agree that the dominant or principal feature of the parties' transaction was in the nature of a real estate broker wherein a license would be required (*see*, Real Property Law § 440-a; *Eaton Assocs. v Highland Broadcasting Corp.*, *supra*, at 604). As plaintiff did not possess the requisite license, we agree with Supreme Court that the agreement between plaintiff and Stockade was unenforceable due to illegality. In so finding, we need not address any of the damages that plaintiff claims to flow therefrom.

Mikoll, J. P., Mercure, Crew III and Yesawich Jr., JJ., concur. Ordered that the judgment is affirmed, with costs.