[734 NYS2d 185]

EDWARD J. KREUTER et al., Appellants, v THEODORE TSUCALAS et al., Respondents.

Second Department, December 3, 2001

APPEARANCES OF COUNSEL

*Coral Ortenberg Zeck & Codispoti, P. C.,* Suffern (*Lawrence A. Codispoti* of counsel), for appellants.

*Mitchell & Incantalupo,* Forest Hills (*Susan R. Nudelman* of counsel), for respondents.

### OPINION OF THE COURT

Krausman, J.

We are asked to determine on this appeal whether a person who negotiates a reduced payoff figure for an existing mortgage must be a licensed real estate broker in order to recover a fee for his services. For the reasons which follow, we find that the plaintiff Edward J. Kreuter was not required to have a license in order to negotiate with the mortgagee on behalf of the defendant Theodore Tsucalas, and that Kreuter is thus entitled to recover the commission to which the parties agreed.

Kreuter is an officer and employee of the plaintiff Equitable Mortgage Corporation (hereinafter Equitable), which is a registered mortgage broker. The defendant Theodore Tsucalas is the owner of two adjoining parcels of property located on West 26th Street in Manhattan. Tsucalas is also the principal of the corporate defendant, Tommy's West 231st Realties, Inc. (hereinafter Tommy's West), which owns premises located at West 231st Street in the Bronx.

In the spring of 1996, Tsucalas allegedly approached Kreuter to request his assistance in negotiating a reduced payoff figure for an existing mortgage on the West 26th Street properties.

The mortgage was held by the Resolution Trust Corporation (hereinafter RTC), which acts as a receiver for failed banking institutions (*see, Federal Fin. Co. v Levine,* 248 AD2d 25). The mortgage, which had an outstanding balance of over $400,000, had matured, and Tsucalas feared foreclosure because he had been unable to secure new financing. On or about April 25, 1996, Kreuter and Tsucalas signed a handwritten agreement, in which Tsucalas agreed to pay Kreuter a flat fee of $10,000 if he negotiated a payoff figure for the West 26th Street mortgage which was at least $25,000 lower than its outstanding balance. Upon signing the agreement, Tsucalas paid Kreuter a $2,500 retainer.

In order to raise the funds needed to satisfy the existing mortgage, Kreuter suggested that Tsucalas retain Equitable to secure a mortgage on the Bronx property owned by Tommy's West. In furtherance of this plan, the parties signed another agreement requiring Tommy's West to pay Equitable a fee of three points of the amount of the mortgage loan, which would be due when a commitment was obtained. About three months later, on August 6, 1996, Equitable obtained a $240,000 mortgage commitment for Tommy's West from Greenpoint Bank. It is undisputed that the three-point fee due to Equitable pursuant to the parties' agreement was $7,200, and that $2,200 of this sum was paid, leaving a balance of $5,000 still outstanding.

Kreuter further claims that after the mortgage commitment on the Bronx property had been obtained, Tsucalas agreed to modify their fee agreement regarding the West 26th Street properties to provide him with a commission equaling 40% of the total amount of any savings he achieved through the negotiation of a reduced payoff figure. On August 28, 1996, Kreuter sent Tsucalas a letter to "confirm the changes to our original agreement," which stated that "[i]n order to provide Edward J. Kreuter an incentive to negotiate a larger mortgage reduction then $25,000 for a fee of $10,000 * * * Theodore Tsucalas has agreed to pay Edward J. Kreuter a fee of 40% of the entire savings." However, Tsucalas denies that he ever received this letter.

Shortly thereafter, Kreuter began negotiations to obtain a lower payoff figure for the West 26th Street properties with Glaves & Associates, Inc. (hereinafter Glaves), which was representing RTC as a servicing agent for mortgage loans. To this end, Kreuter made a written offer to satisfy the mortgage on the West 26th Street properties for $225,000. Kreuter then

provided Glaves with financial information pertaining to the properties, including operating statements and lease agreements, assisted Tsucalas in completing a personal financial form, and was present when an appraiser went to inspect the premises. In early December 1997, Glaves made a counteroffer to allow the mortgage to be satisfied for $250,000 and Kreuter agreed to accept it on Tsucalas's behalf. A few days later, on December 17, 1997, Kreuter and Tsucalas signed a second written agreement to "confirm the changes" to their original fee agreement. The December 17th agreement provided that Kreuter's fee would be 40% of the reduction in the current mortgage balance instead of the $10,000 flat fee indicated in the original agreement, and stated that it was estimated that the mortgage would be reduced by $177,997.35, resulting in a commission of $71,198.

Although Tsucalas subsequently satisfied the outstanding mortgage on the West 26th Street properties for the reduced sum of $250,000, he refused to pay Kreuter a $71,198 commission in accordance with the December 17, 1997 agreement. The plaintiffs then commenced this action to recover both the fee due pursuant to the December 17th agreement, and the $5,000 fee due to Equitable under the terms of the separate agreement to procure a mortgage on the Bronx property owned by Tommy's West. At the conclusion of a nonjury trial, the Supreme Court found that the December 17th agreement was unenforceable, and that Kreuter was owed only the unpaid $7,500 balance of the flat $10,000 fee the parties originally agreed he would receive for his services in negotiating a reduced payoff figure for the mortgage on the West 26th Street properties. In reaching this determination, the Supreme Court noted that Kreuter and the mortgagee came to an agreement on the payoff figure prior to the execution of the December 17th agreement. The Supreme Court additionally awarded the plaintiffs the $5,000 fee owed pursuant to the separate agreement between Equitable and Tommy's West.

On appeal, the plaintiffs contend that the Supreme Court erred in finding that the December 17, 1997 agreement was unenforceable, and that they are entitled to the $71,198 commission due under its terms. The defendants counter that the December 17th agreement was invalid because it was not supported by new consideration. The defendants further maintain that even if the December 17th agreement is found to be enforceable, the plaintiffs are barred from recovery because neither Kreuter nor Equitable are licensed real estate brokers. No

issue is raised by the parties in regard to the $5,000 awarded to the plaintiffs for Equitable's services in procuring a mortgage commitment for Tommy's West.

■ Turning first to the issue of whether the December 17, 1997 agreement constituted a valid contract, we reject the Supreme Court's apparent conclusion that the contract was unenforceable because it was based upon past consideration. Although it is undisputed that Kreuter negotiated the reduced mortgage payoff figure before the execution of the December 17th agreement, General Obligations Law § 5-1105 provides that "[a] promise in writing and signed by the promisor * * * shall not be denied effect as a valid contractual obligation on the ground that [the] consideration for the promise is past or executed, if the consideration is expressed in the writing and is proved to have been given or performed." In order to be enforceable pursuant to General Obligations Law § 5-1105, the writing must contain an unequivocal promise to pay a sum certain, at a date certain, and must express consideration for the promise (see, Umscheid v Simnacher, 106 AD2d 380). The December 17th agreement contains an unequivocal promise to pay Kreuter a sum certain upon satisfaction of the outstanding mortgage for $250,000, and sufficiently expresses the consideration which Kreuter provided in exchange for the promised payment. Accordingly, the agreement is enforceable (see, Movado Group v Presberg, 259 AD2d 371; Mast Prop. Investors v Gaines Serv. Leasing Corp., 194 AD2d 412; Sarama v John Mee, Inc., 102 Misc 2d 132).

■ Furthermore, we reject the defendants' contention that Kreuter is barred from recovering a fee for the services he performed in connection with this agreement because neither he nor Equitable are licensed real estate brokers. Real Property Law § 440 defines the term "real estate broker" to include any person or entity who, for a fee or commission, lists for sale or attempts to negotiate a sale of an interest in real estate, or "negotiates or offers or attempts to negotiate, a loan secured or to be secured by a mortgage." Furthermore, Real Property Law § 442-d requires any individual or entity seeking compensation for services rendered in connection with the sale or leasing of real estate, or "negotiating a loan upon any real estate," to plead and prove that such person or entity was a duly-licensed real estate broker or salesman on the date when the alleged cause of action arose. The licensing requirement serves to protect the public from inept, inexperienced, or dishonest persons who might perpetrate or aid in the perpetration of

frauds (*see, Eaton Assocs. v Highland Broadcasting Corp.,* 81 AD2d 603, 604; *Dodge v Richmond,* 5 AD2d 593). However, since the licensing provisions contained in article 12-A of the Real Property Law, which regulates the activities of real estate brokers and requires them to be licensed, are penal in nature, they are to be strictly construed (*see, Reiter v Greenberg,* 21 NY2d 388, 391; *Fortune Mgt. Co. v Stockade Mobile Home Park,* 246 AD2d 739, 741).

Although Real Property Law § 442-d clearly bars an unlicensed person from recovering commissions if that person has performed services facilitating the sale or leasing of real property (*see, Berg v Wilpon,* 271 AD2d 629; *Levinson v Genesse Assocs.,* 172 AD2d 400), the statute does not "encompass every situation in which an interest in real estate may be part of the transaction" (*Eaton Assocs. v Highland Broadcasting Corp., supra* at 604). For example, in *Reiter v Greenberg (supra),* the Court of Appeals concluded that a person selling participating interests in a partnership formed to acquire title to real property was not required to be a licensed real estate broker in order to recover a commission. The Court noted that while the partnership was formed solely for the purpose of acquiring title to a commercial building and thereafter operating and managing the building, this fact did not bring the transaction within the purview of the licensing requirements of Real Property Law article 12-A.

Real Property Law article 12-A was also found not to bar the plaintiff's recovery of a fee by this Court in *Eaton Assocs. v Highland Broadcasting Corp. (supra).* In that case, the plaintiff Eaton was hired to prepare, present, and market a refinancing package for the defendant Highland, which owned and operated two radio stations. Eaton prepared a business plan which detailed market share, sales, cash flow, and expenses for Highland to present to potential lenders. As a result of Eaton's activities, Highland obtained first and second mortgage financing from lending institutions. When Eaton brought suit to recover a fee for its services, Highland argued that it was barred from receiving a commission because it did not have a real estate license. This Court rejected Highland's argument, reasoning that Eaton's services, including the preparation of a financial plan and the rendering of financial advice to Highland's employees and officers, fell outside of the scope of brokerage services, and that the purposes of the real estate broker's licensing requirements would not be furthered by requiring compliance from a financial consultant such as Eaton.

Guided by these precedents, we find that the services performed by Kreuter do not come within the ambit of the licensing requirements set forth in Real Property Law article 12-A. By its terms, Real Property Law § 442-d bars an unlicensed person from recovering a fee for "negotiating a loan upon any real estate." However, Kreuter did not negotiate a loan on real property. Rather, he supplied Glaves, which was representing the mortgagee RTC, with Tsucalas's financial information, and negotiated a lower payoff figure for an existing mortgage. Kreuter's actions did not facilitate the sale, transfer, or leasing of the mortgaged property. To the contrary, his services in negotiating a lower payoff figure enabled the property owner to satisfy the existing mortgage, so that he would not be forced to sell it or lose it through foreclosure. The goals sought to be achieved by the licensing statute would not be promoted by extending its reach to encompass Kreuter's activities, which enabled Tsucalas to satisfy the existing mortgage on his West 26th Street properties for a greatly reduced sum (*see, Reiter v Greenberg, supra; Eaton Assocs. v Highland Broadcasting Corp., supra*).

Accordingly, the December 17, 1997 agreement in which Tsucalas agreed to pay Kreuter a fee in the sum of $71,198 upon satisfaction of the mortgage is enforceable. Although Kreuter contends on appeal that he is entitled to the entire $71,198, it is undisputed that Tsucalas paid a $2,500 retainer. Therefore, we modify the judgment to award Kreuter $68,698 ($71,198 minus $2,500), and to award Equitable $5,000 which Tommy's West owes it pursuant to their separate mortgage placement agreement.

RITTER, J. P., LUCIANO and H. MILLER, JJ., concur.

Ordered that the judgment is modified, by deleting the provision thereof awarding the plaintiffs damages in the principal sum of $12,500, and substituting therefor provisions awarding the plaintiff Edward J. Kreuter damages in the principal sum of $68,698, and the plaintiff Equitable Mortgage Corporation damages in the principal sum of $5,000; as so modified, the judgment is affirmed, with costs payable to the plaintiffs.