*898 OPINION OF THE COURT
Ira B. Warshawsky, J.
Preliminary Statement
Defendants move for summary judgment dismissing plaintiffs complaint in motion sequence No. 1. Defendants argue that plaintiff provided defendants with unlicensed real estate brokerage services; therefore, section 442-d of the Real Property Law precludes plaintiffs recovery. Plaintiff cross-moves for summary judgment on its causes of action for breach of contract and unjust enrichment in motion sequence No. 2. Plaintiff argues that pursuant to a written agreement with defendants, he is entitled to a percentage of the post-expense profits of defendants’ sale of a parcel of commercial real estate for which plaintiff previously located for defendants as their real estate finder.
Background
Underlying this dispute was the plaintiffs desire to purchase a parcel of commercial real estate, but not having access to sufficient capital, he sought to include another party. Prior to the disputed transaction, plaintiff Futersak knew defendant Perl. Plaintiff also knew that Perl had sufficient capital to make the subject purchase. Futersak discussed the prospect of making a purchase and Perl was interested. According to Futersak, the intention of the parties was for him to find and locate a willing seller of real estate, for Perl’s corporation to make the purchase and then Futersak would retain an ownership interest. Futersak avers that his job was to find a willing seller to whom he could introduce defendant, but that his involvement went no further and was limited to that of a finder and not a broker. According to Perl, Futersak’s role was that of defendants’ “sales agent” and real estate broker.
Futersak alleges that prior to January 6, 2004, he introduced Perl to a prospective seller of real estate and that he and Perl agreed that he would retain a 15% interest in a subsequent sale by Perl. Perl’s corporation was to purchase property located at 700 Rockaway Turnpike, Lawrence, New York, which is the only real property underlying this dispute. According to Futersak, the parties agreed that in lieu of Futersak contributing 15% of the down payment and maintaining a 15% interest in the ownership by defendants, Futersak would only maintain a 15% interest in any profit realized from a subsequent sale of the property by defendants. According to Perl, it was never the par *899 ties’ intention for Futersak to have an ownership interest in the purchased real estate and plaintiff never paid any money toward the subject transaction at any time.
Around March 2004, Perl formed 700 Rockaway, LLC to purchase the subject property. Defendants purchased the property on March 19, 2007, for $3,600,000, and sold the property 10 days later on March 29, 2007, for $4,700,000, realizing a gross profit of $1,100,000. Pursuant to the terms of the written finder’s agreement between the parties, Futersak was entitled to 15% of the $1,100,000 gross profit, less expenses. Futersak specifies damages at $165,000. Futersak alleges that Perl concealed the fact that defendants sold the property and realized a profit. He demanded payment, but Perl refused.
Perl acknowledges that the written agreement upon which Futersak relies calls for a payment to him of a finder’s fee based upon the sale of the subject property. A copy of this agreement was annexed to defendants’ moving papers. Perl said that Futersak was not a licensed real estate broker at any time he rendered services to defendants regarding the subject property.
Futersak states that he performed certain finder services, which included making Perl aware of the availability of the subject property for sale and presenting some background information related to the property. He says that the intention of the parties was for him to be a part owner of the property along with defendants, but that his ownership interest was limited to receiving a 15% share of any post-expense profit realized from the subsequent sale of the property by defendants. He further notes that the written agreement was prepared by Perl. Despite the agreement’s description of his entitlement to something as a finder’s fee, Futersak states that the rest of the agreement reflects his understanding at the time he signed it that he would be a partner in the purchase of the subject property. Futersak also says that the agreement provides that in lieu of contributing 15% of the down payment for the purchase of the property, he would instead receive 15% of the net profit realized from a subsequent sale.
Perl states that when contemplating the written agreement with Futersak, he agreed to pay Futersak 15% of the post-expense profit of a subsequent sale of the property as a “finder’s fee” if Futersak acted as his “sales agent” in obtaining the subject property. According to Perl, Futersak carried out negotiations on his behalf with the seller for the purchase of the property. Complaining ostensibly that plaintiff violated a fiduciary *900 duty to him, Perl states that Futersak failed to notify Perl of a lis pendens on the property. Perl implies that this was a surprise even though he claims to having just spent considerable time and resources performing his own due diligence, prior to the purchase. He fails to explain how his extensive due diligence failed to reveal the existence of the purported lis pendens.
Perl made reference to a copy of the contract of sale for defendants’ purchase of the property and asserts that this document conclusively establishes that Futersak’s services were that of a broker and not a finder. Futersak was not a party to the contract of sale. Section 14.01 of that contract states: “If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction” (emphasis added). In paragraph 15 of schedule D, specific reference is made to section 14.01 and it reads, “Broker, if any (§ 14.01): NONE.” Paragraph 16 of schedule D reads, “Party to pay broker’s commission (§ 14.01): *10,” apparently making reference to paragraph 10 of the notes to contract annexed to the contract of sale. Paragraph 10 of the notes to contract states: “Buyer shall pay the entire fee owed to Samuel Olshen [szc] or Buyer shall provide Seller with a release from Samuel Olshen [szc] in the form annexed hereto.”
Standard for Summary Judgment
The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact (Smalls v AJI Indus., Inc., 10 NY3d 733, 735 [2008]). When presented with a motion for summary judgment, the function of a court is “not to determine credibility or to engage in issue determination, but rather to determine the existence or non-existence of material issues of fact” (Quinn v Krumland, 179 AD2d 448, 449-450 [1st Dept 1992]; see also S.J. Capelin Assoc. v Globe Mfg. Corp., 34 NY2d 338, 343 [1974]).
To grant summary judgment, it must clearly appear that no material and triable issue of fact is presented (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). It is a drastic remedy, the procedural equivalent of a trial, and will not be granted if there is any doubt as to the existence of a triable issue (Moskowitz v Garlock, 23 AD2d 943 [3d Dept 1965]).
The evidence will be considered in a light most favorable to the opposing party (Wezss v Garfield, 21 AD2d 156 [3d Dept *901 1964]). The proof submitted in opposition will be accepted as true and all reasonable inferences drawn in favor of the opposing party (Tortorello v Carlin, 260 AD2d 201, 206 [1st Dept 1999]). The opposing party must come forward with an affidavit of an individual with personal knowledge, or with an attorney’s affirmation to which is appended material in admissible form, and the failure to do so may lead the court to believe that there is no triable issue of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Defendants’ Motion for Summary Judgment
Defendants’ motion for summary judgment dismissing plaintiffs complaint makes one argument relying upon section 442-d of the Real Property Law, which reads in part:
“No person . . . shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.”
A plain-meaning reading of the statute reveals that a real estate broker’s license is a prerequisite to recover compensation for real estate brokerage services. Thus, the key question is whether section 442-d applies to the services rendered by Futersak in the underlying transaction. If section 442-d applies to the underlying transaction here, the statute forecloses Futersak’s recovery (Berg v Wilpon, 271 AD2d 629 [2d Dept 2000]). But for the application of section 442-d, defendants’ motion fails. Because defendants argue that Futersak acted as a broker and Futersak argues that he was merely a finder, the question of whether section 442-d applies turns on the distinctions, if any, between a broker and a finder. If such distinctions exist, the court must ascertain what criteria will determine whether the disputed services fall under the ambit of a broker or a finder.
Section 442-d of the Real Property Law is subject to the definitions established in section 440 (1) of the same article. Section 440 (1) defines a real estate broker as anyone who “lists for sale, sells . . . exchanges, buys or rents, or offers or attempts to negotiate a sale ... or interest in real estate” (Panarello v Segalla, 6 AD3d 515, 516 [2d Dept 2004], lv dismissed 4 NY3d 739 [2004], lv denied 6 NY3d 706 [2006]). Guided by the language of section 440 (1), the court must determine whether plaintiff *902 listed for sale, sold, exchanged, bought, rented, offered to negotiate a sale, or attempted to negotiate a sale, or interest in real estate. As discussed supra, whether or not plaintiffs activities come within the definition of section 440 (1) determines whether section 442-d applies to plaintiff. In answering this question, the court ostensibly endeavors to ascertain the differences between brokers and finders, and determine whether plaintiff is a finder or a broker.
Distinguishing Brokers and Finders
While they perform some related functions, finders and brokers are different (Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 163 [1993]; 11 NY Jur 2d, Brokers § 3). New York courts distinguish between finders and brokers. Finders find potential buyers or sellers, stimulate interest and bring parties together, while brokers bring the parties to an agreement on particular terms (Train v Ardshiel Assoc., Inc., 635 F Supp 274, 279 [SD NY 1986]). Distinguishing between a broker and finder involves an evaluation of the quality and quantity of services rendered (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 163; 11 NY Jur 2d, Brokers § 3).
Quality and Quantity of Services
A broker is an agent who, for a commission or brokerage fee, bargains or carries on negotiations in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of real property. (Gerstein v 532 Broad Hollow Rd. Co., 75 AD2d 292, 296 [1st Dept 1980]; 11 NY Jur 2d, Brokers § 1.) He acts as an intermediary between two parties in bringing about a contractual meeting of minds (Polo v Lordi, 261 NY 221, 224 [1933]).
Brokers must bring parties to a completed agreement, but finders have no such responsibility (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 163; 11 NY Jur 2d, Brokers § 3). That is because finders have far less involvement in the ultimate transaction quantitatively and qualitatively, and thus have significantly fewer and different responsibilities than brokers. (Id.) For example, finders may accomplish work in as little as two phone calls and, if the parties later conclude a deal, he is entitled to his commission (Minichiello v Royal Bus. Funds Corp., 18 NY2d 521, 527 [1966], cert denied 389 US 820 [1967]). It is not necessary for a finder to literally bring the parties together — the introduction can consist of facilitating the exchange of information which results in a deal. (Bankers Trust Co. v Publicker Indus., Inc., 641 F2d 1361, 1367 [2d Cir 1981], citing Minichiello v Royal Bus. Funds Corp., 18 NY2d at 527.)
*903 A finder must introduce and bring the parties together, but without any obligation or power to negotiate the transaction, in order to earn the finder’s fee. (Northeast Gen. Corp., 82 NY2d at 163, citing Ames v Ideal Cement Co., 37 Misc 2d 883, 886 [Sup Ct, NY County 1962]). Significantly, following the finder’s bringing together of interested parties, it is the parties who themselves negotiate and consummate the transaction (Ames v Ideal Cement Co., 37 Misc 2d at 886).
The services performed by finders may vary from case to case. (Id.) But their distinction from the status of brokers, if the circumstances of the particular case require such a distinction to be drawn, lies in their bringing the parties together with no involvement on their part in negotiating the price or any of the other terms of the transaction. (Id.) Finders are merely required to find, interest, introduce and bring parties together for a deal which they themselves negotiate and consummate, while a broker is required to bring the parties to a completed agreement (Federal Trade Commn. v Metropolitan Communications Corp., 1995 WL 571461, *3, 1995 US Dist LEXIS 14083,*8-9 [SD NY 1995], citing Ames v Ideal Cement Co., 37 Misc 2d at 886). Fiduciary Duty
Although brokers perform that same introduction task, they must ordinarily also bring the parties to a completed agreement by negotiating on behalf of their principals (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 163). By virtue of this responsibility to negotiate on behalf of their principal, brokers in New York, unlike finders, carry a fiduciary duty to act in the best and more involved interests of the principal. (Id.-, 11 NY Jur 2d, Brokers §§ 3, 27.)
However, where the relationship between two parties is such that one merely finds prospective business opportunities for the other in exchange for a finder’s fee, the relationship is not inherently one of trust and confidence. (J.O.P. Consulting Group v McCawley Precision Mach. Corp., 272 AD2d 82, 82 [1st Dept 2000].) A party who does no more than enter into an agreement to perform the services of a finder, such as introducing a party looking to buy real estate to certain sellers of same, does not enter into a fiduciary relationship with that person (Trump v Corcoran Group, 240 AD2d 159, 159 [1st Dept 1997]). Thus, where a plaintiff is not called upon by a defendant to carry on negotiations, that plaintiff is merely a finder and not a broker (Simon v Electrospace Corp., 28 NY2d 136, 141 [1971]).
But, where a plaintiff engages in negotiations on behalf of his principal, he cannot evade the proscriptions of section 442-d by *904 merely characterizing himself as something less than a fiduciary (Horin v EMI Progressive Equities, Inc., 16 Misc 3d 1139[A], 2007 NY Slip Op 51749[U], *7 [Sup Ct, Kings County 2007] [plaintiffs argued that they were nothing more than finders but testified at their depositions that they negotiated on behalf of defendants, brought about the meeting of the minds between the buyers and sellers, and sold the subject properties]; see also Myles v Litas Inv. Co., 152 AD2d 731 [2d Dept 1989]). The dispositive issue of fiduciary-like duty or no such duty is determined not by the nomenclature “finder” or “broker” or even “agent,” but instead by the services agreed to under the contract between the parties (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 163).
Any question as to whether a plaintiff negotiated on behalf of his principal is a question of fact (Seckendorff v Halsey, Stuart & Co., 229 App Div 318, 320 [1st Dept 1930]).
Differences in Entitlement to Fee
There are also differences in how courts determine a broker’s or finder’s entitlement to his fee. A finder must demonstrate that the final deal which was carried through flowed directly from his introduction of the matter to be entitled to collect his fee (Seckendorff v Halsey, Stuart & Co., 234 App Div 61, 71 [1st Dept 1931], revd on other grounds 259 NY 353 [1932]; cf. Ben-dell v De Dominicis, 251 NY 305, 311 [1929] [brokerage commissions ordinarily become due when the broker produces to his principal a party ready, willing and able to purchase on the terms of sale authorized or accepted by such principal]). While a finder may be entitled to his fee in a special business situation for merely introducing and bringing the parties together to conduct their own negotiations, if that is his agreement with his principal, a licensed real estate broker, however, cannot recover unless he brings the parties to an agreement (Lehman v Arlen Operating Co., 54 Misc 2d 372, 375 [Sup Ct, NY County 1967]).
Statutory Distinctions
The New York Legislature, like the courts, also distinguishes brokers from finders and treats them differently. New York’s statute of frauds applies to finders and their agreements to provide finder services, which means that finders must memorialize their agreements to find in writing to be enforceable (General Obligations Law § 5-701 [a] [10]; see generally Minichiello v Royal Bus. Funds Corp., 18 NY2d 521 [1966]). But, “a duly licensed real estate broker or real estate salesman” is explicitly exempted from this writing requirement when contracting to *905 provide brokerage services (General Obligations Law § 5-701 [a] [10]).
There are still other statutory distinctions between finders and brokers. In the real estate context, brokers, unlike finders, are subject to a unique legislative mandate. That mandate is the detailed statutory scheme codified in article 12-A of the Real Property Law. For example, a license is required before a person may provide real estate brokerage services (Real Property Law § 440-a). Finder services are not subject to such a detailed statutory scheme. The New York Department of State, through the State Real Estate Board, has the power to administratively regulate real estate brokerage licenses, which includes the power to suspend or revoke (see Real Property Law §§ 442-h, 442-i, 442-k). Finders are not subject to such an administrative oversight.
Significantly, the legislative scheme embodied in article 12-A of the Real Property Law serves several important public policy goals. The legislative purpose of the licensing requirement under the Real Property Law is to protect the public from inept, inexperienced, or dishonest persons who might perpetrate or aid in the perpetration of fraud (Kavian v Vernah Homes Co., 19 AD3d 649, 650 [2d Dept 2005]). This is especially true for brokers because, unlike finders, they owe a fiduciary duty to their principals.
Cases Where Real Property Law Did Not Apply
Because the licensing provisions contained in article 12-A of the Real Property Law are penal in nature (see e.g. Real Property Law § 442-e), they are to be strictly construed (Kreuter v Tsucalas, 287 AD2d 50, 55 [2d Dept 2001]; Eaton Assoc. v Highland Broadcasting Corp., 81 AD2d 603, 604 [2d Dept 1981]). Article 12-A’s provisions are not broad enough to cover every transaction in which an interest in real estate may be part of the subject transaction (Reiter v Greenberg, 21 NY2d 388, 391-392 [1968]; Weingast v Rialto Pastry Shop, 243 NY 113, 116 [1926]).
The analysis determining whether services are in the nature of real estate brokering or of real estate finding appears to turn on whether those services included negotiation on behalf of the principal. As discussed supra, the question of whether negotiation was part of the services provided is factually intensive. Therefore, the inquiry of whether services are in the nature of brokering or finding is also factually intensive. To be sure, there are cases illustrating the fact-intensive nature of the inquiry of determining whether the provisions of article 12-A of the Real Property Law would apply.
*906 For example, in Reiter v Greenberg (21 NY2d 388 [1968], supra), the Court of Appeals concluded that a person selling participating interests in a partnership formed to acquire title to real property was not required to be a licensed real estate broker in order to recover a commission. The court noted that while the partnership was formed solely for the purpose of acquiring title to a commercial building and thereafter operating and managing the building, this fact did not bring the transaction within the purview of the licensing requirements of article 12-A of the Real Property Law. (Id. at 391-392.)
In Weingast v Rialto Pastry Shop (243 NY 113 [1926], supra), a business broker found a buyer for an ongoing business enterprise and negotiated the sale of same. Plaintiff sought payment for his services, but defendant argued that, because the sale included a lease for real property and plaintiff was not a licensed real estate broker, recovery was barred by the Real Property Law. The Court of Appeals found that the plaintiff was not in the business of procuring leases or in buying and selling leases or interests in real estate as such. (Id. at 117.) Even though plaintiff negotiated the transaction, plaintiff did not negotiate for a transaction in real estate. (Id.)
In Kreuter v Tsucalas (287 AD2d 50 [2001], supra), the Appellate Division, Second Department, found that the Real Property Law did not bar plaintiffs recovery of a fee for negotiating a lower payoff amount for an existing mortgage because plaintiff was not negotiating a loan upon, or the sale or transfer of, real property. Plaintiff communicated financial information related to the deal among the parties. (Id. at 56.) His services in negotiating a lower payoff figure enabled the property owner to satisfy the existing mortgage, so that he would not be forced to sell it or lose it through foreclosure. (Id.) The goals sought to be achieved by article 12-A would not be promoted by extending its reach to encompass the Kreuter plaintiffs activities, which enabled defendant to satisfy the existing mortgage on his properties for a greatly reduced sum. (Id.)
Real Property Law article 12-A was also found not to bar the plaintiffs recovery of a fee by the Appellate Division, Second Department, in Eaton Assoc. v Highland Broadcasting Corp. (81 AD2d 603 [1981], supra). In that case, plaintiff Eaton was hired to prepare, present and market a refinancing package for the defendant Highland, which owned and operated two radio stations. (Id.) Eaton prepared a business plan which detailed market share, sales, cash flow and expenses for Highland to *907 present to potential lenders. (Id.) As a result of Eaton’s activities, Highland obtained first and second mortgage financing from lending institutions. (Id.) When Eaton brought suit to recover a fee for its services, Highland argued that it was barred from receiving a commission because it did not have a real estate license. (Id.) The Second Department rejected Highland’s argument, reasoning that Eaton’s services, including the preparation of a financial plan and the rendering of financial advice to Highland’s employees and officers, fell outside of the scope of brokerage services, and that the purposes of the real estate broker’s licensing requirements would not be furthered by requiring compliance from a financial consultant such as Eaton (id. at 604).
Summary of Distinctions
These precedents demonstrate that activities falling outside the scope of negotiation or a fiduciary-like duty militate in favor of finding that the Real Property Law does not apply. When the agent does negotiate or carry a fiduciary-like duty, the subject matter of the negotiation must be a transaction for a real estate interest if the Real Property Law is to apply. The mere presence of a real estate transaction does not command the application of section 442-d. Were this the case, its application would be unlimited and indiscriminately apply to many other participants routinely appearing in a real estate transaction who may not be licensed brokers, such as members of. lending institutions, title companies and other entities. It is a prerequisite to section 442-d’s application that there must be a transaction for real estate. Once this is established, the court must scrutinize the services involved to determine if there was a fiduciary-like duty and negotiations were performed at the behest of the principal.
Applying Broker-Finder Distinctions
The court finds that the services performed by plaintiff were those of a finder and do not come within the ambit of the licensing requirements set forth in section 442-d of the Real Property Law. A review of the facts on this record militates in favor of this conclusion.
The written agreement between the parties, and drafted by defendant, explicitly refers to plaintiff being compensated in the role of a finder. There is nothing in the agreement, explicit or implied, that Futersak was an agent of defendants in the actual or functional meaning of that term and relationship. Futersak had no explicit or implied power to bind defendants. He did not have the power to negotiate the transaction. Futersak did not *908 have the power to do anything except find and introduce prospects. The parties do not dispute that plaintiff provided for the introduction of defendant to a willing seller of a parcel of commercial real estate, which defendant ultimately purchased and later sold for a profit of $1,100,000. Thus, by the written agreement and through the actions of the parties, Futersak had no power to affect any legal relations of defendants and the prospective seller of the subject property that would propel the duties into the fiduciary-like sphere.
Contrary to Perl’s contention, the contract of sale for the property does not support the conclusion that plaintiff was a broker conducting negotiations rather than a mere finder. First, the language of section 14.01 of the contract of sale unambiguously and explicitly makes plain that, because no broker is listed in schedule D, the parties utilized no broker and negotiated directly with each other. Paragraph 15 of schedule D states in capital letters that there was no broker. However, paragraph 16 of schedule D refers to the party to pay broker’s commission, and paragraph 10 of the notes to contract refers to a “fee” owed Futersak.
Upon reviewing the contract of sale, the court is not engaging in the interpretation of this document in regard to the intentions of its signatories. Rather, the court views the contract of sale in its entirety to ascertain, on its face, whether it has any probative value with respect to the claims of the parties in the instant litigation. Because the document contains clear and unambiguous language with regard to whether brokerage services were utilized and whether the buyer and seller negotiated directly, the court finds that this submission addresses a material issue in dispute in the instant matter. Because Perl is a party to the contract of sale, and that document contains clear and unambiguous representations regarding a material issue disputed in the instant litigation, the court finds that the contract of sale has probative value.
When the contract of sale is considered in its entirety, the court finds that, on its face, it demonstrates that Perl did not utilize a broker and that Perl negotiated directly with the seller. Significantly, the contract of sale does not say that Futersak was a finder or that he was paid as a finder. Rather, that document explicitly eliminates the possibility that Futersak was the broker or that he negotiated on behalf of Perl.
Perl’s affidavits are replete with conclusory, self-serving statements flatly contradicted by the contract of sale. The written *909 agreement between Perl and Futersak to compensate Futersak with a finder’s fee of 15% of any post-expense profit realized by Perl should he sell the subject property for a profit, though in-artfully drafted, is unambiguous with respect to Futersak’s designation as a finder. Pursuant to the unambiguous language of the written agreement, if Futersak was to be compensated, he would be compensated with a “finder’s fee.” There is no language in the agreement authorizing or requiring negotiation or any other fiduciary-like duty.
It is an elementary rule that contracts are construed in accordance with the intent of the parties and the best evidence of the parties’ intent is what they write in their agreement (Goldman v White Plains Ctr. for Nursing Care, LLC, 11 NY3d 173, 176 [2008]). Thus, the parties’ intent will generally be discerned from the four corners of the document itself (IDT Corp. v Tyco Group, S.A.R.L., 13 NY3d 209, 214 [2009]). A contract is unambiguous if the language it uses has “a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion” (Breed v Insurance Co. of N. Am., 46 NY2d 351, 355 [1978], rearg denied 46 NY2d 940 [1979]). Consequently, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms. (Id.) When presented with such an agreement, “a court is not free to alter the contract to reflect its personal notions of fairness and equity.” (Graev v Graev, 11 NY3d 262, 276 [2008], quoting Greenfield v Philles Records, 98 NY2d 562, 570 [2002].)
Perl, as well as Futersak, offers extensive parol evidence to explain their intentions related to the one-page agreement for Futersak to receive a finder’s fee. But evidence outside the four corners of the document as to what was really intended, unstated or misstated, is generally inadmissible to add to or vary the writing. (W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990].) Such considerations are all the more compelling in the context of real property transactions, where commercial certainty is a paramount concern. (Id.) It is also important to read the document as a whole to ensure that excessive emphasis is not placed upon particular words or phrases. (Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003].) Extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face. (South Rd. Assoc., LLC v Interna *910 tional Bus. Machs. Corp., 4 NY3d 272, 278 [2005].) Because the court finds the one-page written agreement to be unambiguous on its face, extrinsic evidence will not be considered.
Further, the court is not persuaded by Perl’s attempts to introduce extrinsic evidence in light of his self-serving statements. Perl acknowledges that the agreement he apparently drafted calls for payment to Futersak of a finder’s fee in the event of a subsequent sale of the property. He also acknowledges that Futersak introduced the buyer and seller, a transaction was completed and a profit realized. Perl repeatedly infers that Futersak should be accountable for the performance of various services not memorialized in their agreement rather than Perl being held accountable for what is memorialized in their agreement.
Perl attempts to contradict the language of the finder’s agreement by characterizing Futersak’s activities as that of a negotiator and fiduciary are flatly contradicted by Perl’s own documents. Even in his affidavits, Perl repeatedly refers to Futersak as a “finder” and refers to the payment he concedes he would owe Futersak as a “finder’s fee” if his introduction of Perl to the seller later resulted in a profit from a subsequent sale, which it did. As discussed supra, the existence of a fiduciary duty is not determined by the nomenclature “finder” or “broker” or even “agent,” but instead by the services agreed to under the contract between the parties. (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 163.)
If Perl wanted a fiduciary-like relationship or responsibility, he could have bargained for and specified for it in the contract. (Id. at 165; Trump v Corcoran Group, 240 AD2d at 159.) The court is reluctant to reform the agreed-upon finder relationship in this case. “This Court, after all, is not the omniscient, great equalizer of the marketplace, with all its ups and downs, give and take, and varieties of conduct and relationships.” (Northeast Gen. Corp. v Wellington Adv., 82 NY2d at 165.)
In an attempt to characterize Futersak’s responsibilities as that of a fiduciary, Perl complains in an affidavit that Futersak knew of a possible encumbrance on the property in the form of a lis pendens, but failed to advise Perl. It is true that if Futersak were Perl’s broker, then Futersak would have had a duty to communicate any information that might affect Perl’s interest in the transaction. But, Perl’s effort at analogizing whatever fiduciary-like obligation brokers may have to plaintiffs role as a finder fails. (Id. at 163; cf. John J. Reynolds, Inc. v Snow, 11 *911 AD2d 653, 653-654 [1st Dept 1960], affd 9 NY2d 785 [1961].) Perl also said that this so-called failure by Futersak to disclose the lis pendens justified not paying Futersak anything for his services, which would be tantamount to rescission of their contract. But, even if Perl and Futersak had a fiduciary relationship, Futersak’s purported nondisclosure would not be a ground for rescission (Trump v Corcoran Group, 240 AD2d at 159).
Beyond Perl’s statements about a purported lis pendens, there is no evidence on this record indicating that Futersak offended any of the public policy goals of article 12-A of the Real Property Law. And, although the court is concerned that Perl appears to be using article 12-A as a sword for personal gain rather than a shield from unscrupulous conduct, it need not pass on this question to resolve the instant motions.
Review of Cases Cited by Defendants
In support of its argument, defendant refers to the holding of Feldbau v Klarnet (109 Misc 2d 32 [Civ Ct, Queens County 1981], citing Minichiello v Royal Bus. Funds Corp., 18 NY2d 521 [1966], supra). In Feldbau, the court considered whether a plaintiff without a real estate broker’s license could recover a finder’s fee. The court’s recitation of the language of the agreement between the parties reveals an important difference from the instant matter. Significantly, unlike the Feldbau contract, the contract in the instant matter utilized the term “finder.” Unlike the Feldbau defendant, defendants’ motion here is undermined by another document, the subject property’s contract of sale, which plainly states that no broker was utilized and that the parties negotiated directly. Further, the Feldbau court recognized that the Court of Appeals in Minichiello drew a distinction between finders and brokers, but the Feldbau court provided no analysis to ascertain if those distinctions existed. This court, however, conducted a detailed analysis on that distinction. Factually, Minichiello addresses the question of whether the statute of frauds applies to finder agreements, which is not in dispute here.
Disposition of Defendants’ Motion
In summary, upon close review of the facts on this record and, in particular, the duties and responsibilities of Futersak flowing from the written agreement between the parties, Futersak had neither the power nor the responsibility to negotiate. He also did not have the power to bind Perl. The other documentary submissions by the parties, notwithstanding inadmissible parol *912 evidence, demonstrate that Futersak’s services were limited to introducing the parties and providing Perl some information about the subject property. Futersak’s services with respect to the subject property were those of a finder and not in the nature of a real estate broker such that they come within the definition of a broker pursuant to section 440 (1) of the Real Property Law. Thus, section 442-d of the Real Property Law does not apply to Futersak’s services related to this transaction. Accordingly, defendants’ motion for summary judgment dismissing Futersak’s complaint is denied.
Plaintiffs Cross Motion for Summary Judgment
Futersak moves for summary judgment on his causes of action for breach of contract and for unjust enrichment. A cause of action for breach of contract requires the existence of a contract, the plaintiffs performance under the contract, the defendant’s breach of that contract and resulting damages. (JP Morgan Chase v J.H. Elec, of N.Y., Inc., 69 AD3d 802, 803 [2d Dept 2010].)
It is undisputed that there was a written agreement between the parties with regard to Futersak’s finder services. There is also valid consideration as the parties’ agreement reflects an exchange of Futersak’s finder services for a payment by Perl in the order of 15% of any post-expense profits realized in a subsequent sale of the subject property. It is also undisputed that Futersak introduced Perl to the prospective seller, Perl bought the subject property and Perl realized a profit following its subsequent sale. Perl does not refute Futersak’s allegation of nonpayment or that Futersak suffered damages for lack of payment.
The finder’s entitlement to compensation turns on whether the transaction ultimately entered upon is a direct result of the disclosure of the opportunity by the finder. (Simon v Electrospace Corp., 32 AD2d 62, 66 [1st Dept 1969], mod 28 NY2d 136 [1971] [modified as to damages].) Here, the parties agree that Futersak’s introduction of Perl to the seller led to Perl’s purchase of the subject property, which resulted in Perl’s subsequent sale of the property for a profit.
In his moving papers, Futersak characterized his entitlement to his finder’s fee as flowing from an ownership interest in the subject property. Since Futersak did not contribute any money toward Perl’s purchase of the subject property, reading the parties’ agreement as one for an ownership interest in Futersak’s favor would fail for a want of consideration in Perl’s favor. But, *913 Futersak’s ñnder services would be valid consideration for an ownership interest, especially since they set in motion the transactions leading to Perl’s profits. But even if Futersak’s finder services did not independently create value, consideration to support an agreement exists where there is either a benefit to the promisor or a detriment to the promisee. (Weiner v McGraw-Hill, Inc., 57 NY2d 458, 464 [1982]; Hollander v Lipman, 65 AD3d 1086,1087 [2d Dept 2009].) It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him. (Hamer v Sidway, 124 NY 538, 545 [1891]; Hollander v Lipman, 65 AD3d at 1087.) Moreover, even if Futersak’s entitlement to a finder’s fee flowed from an ownership interest, rather than for his services, the result would be the same.
On these facts, Futersak establishes a prima facie case for breach of contract. Although Perl sought to preclude plaintiffs recovery by application of section 442-d of the Real Property Law, as discussed supra, section 442-d does not apply to Futersak’s services regarding the transaction for the subject property. Perl otherwise fails to create a triable issue of fact to defeat Futersak’s motion. Accordingly, Futersak’s cross motion for summary judgment on his first cause of action for breach of contract is granted. Futersak’s second cause of action, in the alternative, for unjust enrichment is rendered academic.
In an abundance of caution, the court notes that the parties failed to address the merits of defendants’ affirmative defenses in their motion and cross motion for summary judgment. Based upon this record, however, each affirmative defense is without merit and would otherwise fail to create an issue of fact to defeat Futersak’s cross motion for summary judgment.
Conclusion
Defendants’ motion for summary judgment dismissing plaintiffs complaint is denied. Plaintiffs cross motion for summary judgment on its first cause of action for breach of contract is granted. The parties will proceed to trial to determine damages.