******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NEW CAPITAL SOLUTIONS, LLC *v.* KOSL PROPERTIES, LLC, ET AL.
## (AC 47721)

Clark, Westbrook and Flynn, Js.

*Syllabus*

New York Real Property Law (§ 442-d) provides that a person not duly licensed as a real estate broker in the state of New York may not maintain an action to recover compensation for real estate brokerage services rendered in any place in which the statute is applicable.

The plaintiff, a brokerage firm with a principal place of business in Connecticut, appealed from the trial court's judgment for the defendants, a New York limited liability company, K Co., and its managing member, B, on the plaintiff's breach of contract claim. The plaintiff and K Co. contracted for the plaintiff to find a lender willing to make a loan to K Co., to be guaranteed by B, for the purpose of refinancing a mortgage on real property in New York. The plaintiff claimed, inter alia, that the court erred in applying § 442-d in the absence of proper notice from the defendants in accordance with the rule of practice (§ 10-3), which requires notice that sufficiently apprises an opposing party that it intends to rely on a particular statute. *Held*:

The trial court did not improperly engage in a choice of law analysis, as the plaintiff had adequate notice, pursuant to Practice Book § 10-3, that the choice of law issue and the applicability of New York Real Property Law § 442-d were before the court, and the plaintiff had a full and fair opportunity to address those issues.

The trial court properly determined that New York Real Property Law § 442-d barred the plaintiff's claims, as there was no dispute that the plaintiff did not hold a New York real estate broker license and, although physically located in Connecticut, acted as an agent for K Co., its New York principal, and, through electronic means, performed real estate brokerage services on K Co.'s behalf by soliciting, negotiating with, and ultimately applying for a loan with a lender that was at all relevant times in New York, to be secured by K Co.'s New York real property, and the plaintiff's representative traveled to New York to attend a meeting with the defendants.

Argued October 16, 2025—officially released June 23, 2026

*Procedural History*

Action to recover damages for breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Golger, J.*; judgment for the defendants, from which the plaintiff appealed to this court. *Affirmed*.

*Matthew C. Mason*, for the appellant (plaintiff).

*Peter V. Lathouris*, with whom, on the brief, was *Elizabeth Nesheiwat*, for the appellees (defendants).

*Opinion*

CLARK, J. The plaintiff, New Capital Solutions, LLC, appeals, following a court trial, from the judgment rendered by the trial court in favor of the defendants, KOSL Properties, LLC (KOSL), and Bobby Ben-Simon. The court concluded that the plaintiff's claims for breach of contract were governed by New York law and were barred by the provisions of New York Real Property Law § 442-d, which provides that a person not duly licensed as a real estate broker in the state of New York may not maintain an action to recover compensation for real estate brokerage services rendered in any place in which that statute is applicable. On appeal, the plaintiff claims that the trial court erred by (1) applying New York law in the absence of proper notice from the defendants in accordance with Practice Book § 10-3 (b) and (2) concluding that § 442-d barred its claims where, according to the plaintiff, the plaintiff provided the services in question from its Connecticut office. We affirm the judgment of the trial court.

The following facts, as found by the trial court or as otherwise undisputed by the parties, and procedural history are relevant to the resolution of this appeal. The plaintiff is a national commercial mortgage advisory and brokerage firm with a principal place of business in Greenwich. KOSL is a New York limited liability company located in Mamaroneck, New York. Ben-Simon is the managing member of KOSL and resides in New York. The plaintiff and Ben-Simon, as the managing member of KOSL, entered into a loan origination fee agreement (agreement) dated July 15, 2019. Upon execution of the agreement, KOSL paid the plaintiff $5000. Under the agreement, the plaintiff promised to use its best efforts to find a lender willing to loan KOSL $4,225,000, to be secured by property located at 875 Mamaroneck Avenue,

Mamaroneck, New York, so that KOSL could refinance an existing mortgage on that property. In exchange, KOSL agreed to pay the plaintiff an origination fee of 1 percent from the loan proceeds. Ben-Simon guaranteed KOSL's obligations under the agreement. The agreement was for an initial six month term from the date of execution and could not be cancelled by either party during this period. Thereafter, the agreement automatically extended for additional six month terms until the loan was funded or it was determined that the loan was not fundable.

William Horty is the plaintiff's managing director. Following the execution of the agreement, Horty initially contacted numerous lenders, including Connecticut Community Bank, N.A., and Putnam County Savings Bank, but none of those initial efforts resulted in a loan agreement. In September 2019, Horty contacted Paul Balanikas, vice president at M&T Bank, regarding a potential loan to KOSL. Horty eventually would submit to M&T Bank a complete loan application on KOSL's behalf. Balanikas' office was located in New York. On December 10, 2019, on behalf of M&T Bank, Balanikas emailed KOSL a term sheet with respect to the proposed loan.

On December 11, 2020, Ben-Simon emailed Horty stating that he would "not extend the agreement upon the expiration date of January 15, 2020," because the plaintiff had yet to produce a loan per the origination fee agreement. Horty testified that he nevertheless continued to work on behalf of KOSL up until closing as the "agreement was still in full force" because KOSL had accepted the financing proposal and was proceeding with the loan. On December 16, 2019, M&T Bank issued an initial commitment letter to KOSL for a commercial mortgage loan to be secured by the Mamaroneck property.

On January 28, 2020, after having issued several revised commitment letters to KOSL, M&T Bank issued a final commitment letter, which Ben-Simon signed on behalf of KOSL. On March 4, 2020, M&T Bank and KOSL entered into rate lock agreements. On March 30, 2020, upon learning that KOSL would be closing on the

loan with M&T Bank, the plaintiff issued a settlement statement to Ben-Simon and M&T Bank indicating a balance due at the closing of the loan per the terms of the agreement. The settlement statement indicated that the origination fee due to the plaintiff was $36,500, which is equal to 1 percent of the final loan amount issued to KOSL ($41,500) minus the payment paid by KOSL upon signing of the origination fee agreement ($5000).

On or about April 6, 2020, M&T Bank and KOSL entered into a term note for the principal amount of $4,150,000 secured by a mortgage on the Mamaroneck property. The closing documents were executed in New York. The plaintiff's fees as outlined in the settlement statement were not paid out of the loan proceeds at the loan closing.

In June 2020, the plaintiff commenced the present action against the defendants by way of a two count complaint sounding in breach of contract: count one against KOSL for breach of the agreement and count two against Ben-Simon for breach of his guarantee of the agreement. In its complaint, the plaintiff alleged that it had satisfied its obligations under the agreement and that the defendants had breached their obligations by failing to pay the balance of the origination fee. The defendants filed an answer denying the plaintiff's allegations that it had satisfied its obligations under the agreement and denying that they owed the plaintiff any money under the agreement. The defendants further raised the special defenses of unclean hands, unconscionability, and setoff, and asserted a counterclaim alleging that the plaintiff breached the agreement by failing to procure financing in accordance with the terms of the agreement not later than January 15, 2020.

On October 19, 2021, the plaintiff moved for summary judgment, claiming that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law on both counts of the complaint and on the defendants' special defenses and counterclaim. The defendants objected to the motion, asserting that

there were genuine issues of material fact concerning whether the plaintiff had procured financing in accordance with the terms of the agreement within the time frame required under that agreement. At that time, neither party raised or addressed the question of whether Connecticut or New York law applied to the claims at issue. The trial court, *Kavanewsky, J.*, denied the motion for summary judgment on June 24, 2022.

On June 22, 2023, the parties filed a joint trial memorandum. Trial was scheduled to commence on July 11, 2023. On July 6, 2023, the defendants filed a request to amend their special defenses by adding a defense of "choice of law." In the proposed amended special defense, the defendants alleged that New York law governed the plaintiff's claims and that those claims were barred by New York law. See N.Y. Real Prop. Law § 442-d (McKinney Cum. Supp. 2026).[1] Specifically, the defendants alleged that "§ 442-d bars suit to recover unpaid fees when the suit fails to allege the plaintiff was a duly licensed real estate broker," and that, because the plaintiff was not a licensed real estate broker, § 442-d barred the plaintiff's claims.[2] The defendants' July 6, 2023 request to amend represented the first instance in which either party raised the choice of law question. Four days later, on July 10, 2023, the defendants also filed a request for the court to take judicial notice of *New Capital Solutions, LLC* v. *Lawrence Woodmere Academy*, United States District Court, Docket No. 3:20-cv-00408 (JCH) (D. Conn.

---

[1] New York Real Property Law § 442-d provides: "No person, copartnership, limited liability company or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesperson on the date when the alleged cause of action arose."

Although § 442-d was amended after the agreement was signed; see 2022 N.Y. Laws 1713; that amendment has no bearing on the merits of this appeal. For purposes of clarity and convenience, we refer to the current revision of the statute.

[2] In their request to amend, the defendants also withdrew their unclean hands and setoff defenses.

January 19, 2021), in which the United States District Court for the District of Connecticut dismissed without prejudice claims brought by the plaintiff in the present action against a different defendant for breach of a commercial origination fee agreement on the ground that the plaintiff had failed to allege that it was a licensed real estate broker in New York pursuant to § 442-d.[3] On that same date, the plaintiff filed a trial memorandum that did not address the defendants' request to amend its special defenses.

On the following day, July 11, 2023, the same date trial was scheduled to commence, the plaintiff filed an objection to the defendants' request to amend their special defenses. In its objection, the plaintiff argued that the request was untimely and prejudicial. The plaintiff also argued, inter alia, that its claim was governed by Connecticut law[4] and that, even if New York law applied, New York Real Property Law § 442-d did not bar its claim because its brokerage services were rendered outside of New York and, thus, not covered by the statute.

At the outset of the trial and before evidence commenced, the court heard argument on the defendants' pending request to amend their special defenses. Prior to ruling on the request and with respect to the choice of law question that the defendants had raised in their request, the court asked counsel for the defendants whether there were "any other ways that you can . . . achieve the same goal other than to amend your special defense? I mean, is it something that . . . you'll be able to brief if the court

---

[3]Although the court in the present case did not rule on the defendants' request to take judicial notice of the decision in *New Capital Solutions, LLC* v. *Lawrence Woodmere Academy*, supra, United States District Court, Docket No. 3:20-cv00408 (JCH), the court referenced that decision in its memorandum of decision in this case.

[4]Specifically, the plaintiff argued that Connecticut law applied because: (1) New York Real Property Law § 442-d only applies to actions brought in New York and the plaintiff brought this action in Connecticut, (2) the parties' agreement contained a forum selection clause requiring any action relating to this agreement be brought in Connecticut, (3) the agreement was executed and performed in Connecticut, and (4) the plaintiff through its managing principal, Iliad Estrada, is a real estate broker or salesperson for the purposes of § 442-d.

takes notice of the decision?" The defendants responded that it would be appropriate to address the issue in post-trial briefs.[5] The plaintiff continued to object to the request to amend, arguing to the court that allowing the amendment would be "untimely and prejudicial."

After hearing from the parties, the court denied the request to amend on the ground that allowing the amendment and opening the pleadings at that late stage would cause a "postponement of trial . . . ." Following the court's ruling, however, counsel for the defendants asked the court whether its denial of the request to amend amounted to "an affirmative ruling that [the court would] be applying Connecticut law to [the] case." The court responded that it would "review everything . . . when the matter is concluded. I'm going to issue a decision on this after evidence is introduced, you know, but I'm not going to allow your amendment."

The evidentiary portion of the trial then commenced. The plaintiff's sole witness was William Horty. The defendants presented testimony from Iliad Estrada, managing principal of the plaintiff, and Ben-Simon. Numerous exhibits also were admitted into evidence, including but not limited to: **(1)** the agreement; **(2)** loan proposals from Putnam County Savings Bank and Connecticut Community Bank, N.A.; **(3)** communications between Balanikas, Ben-Simon, and Horty concerning the M&T Bank loan and its terms; **(4)** communications between Ben-Simon and Horty concerning the purported cancellation of the agreement; **(5)** loan proposals to KOSL from M&T Bank; **(6)** commitment letters for the loan from M&T Bank to KOSL; **(7)** the plaintiff's settlement statement of fees; **(8)** the term note executed between M&T Bank and KOSL; and **(9)** the transcript of Balanikas' deposition.

On direct examination, Horty testified that the agreement included a provision stating that the plaintiff is a "Connecticut based company . . . domiciled in the state of Connecticut" and that "Connecticut law and courts is [the plaintiff's] forum" because the plaintiff "originate[s] loans in many states around the country and . . . [is] not conversant in all of the civil practice laws in the various

---

[5]Posttrial briefs were ordered.

states, so . . . [it] mandate[s] that the forum and the law be the state of Connecticut." The defendants moved to strike that testimony, arguing that the origination fee agreement "speaks for itself . . . [and] . . . doesn't say anything about the law being the state of Connecticut." The court denied the request stating that, "[u]ltimately, there's going to have to be a decision made on the law . . . ."[6]

A substantial portion of the defendants' cross-examination of Horty was devoted to questions pertaining to the choice of law issue that the defendants had raised in the requests to amend and to take judicial notice. The defendants' counsel asked Horty whether he or the plaintiff held a real estate broker's license in New York. Horty testified that he did not, but that Estrada, the managing principal of the plaintiff, held a mortgage origination license in New York at the times relevant to the origination fee agreement. He further testified that the plaintiff could "gladly produce [Estrada's mortgage origination license] number because she's sitting in the courtroom." The defendants then asked Horty about Ben-Simon's residency and KOSL's place of incorporation. Horty testified that he communicated with Ben-Simon over the phone and that he did not know whether Ben-Simon was a resident of New York or whether KOSL was a New York company. The questioning then turned to whether the other lenders Horty contacted were located in New York. Horty testified that Putnam County Savings Bank, a bank he had contacted regarding a proposed loan to KOSL, was headquartered in New York and that the representative who generated the proposal "has an office . . . somewhere in White Plains [New York]." The plaintiff eventually objected to this line of questioning on relevance grounds, arguing that "it's only relevant if the proposed special defense is part [of the case]." The

---

[6]The agreement, which was admitted into evidence and attached as an exhibit to the complaint, includes a forum selection clause requiring any action relating to the agreement to be brought in Connecticut, but does not include a choice of law provision. On appeal, the plaintiff does not argue that the agreement includes a choice of law provision.

court responded that the evidence all "went in, I can't strike it all."

The defendants' counsel continued to ask Horty about matters pertaining to the choice of law issue. Horty testified that he did not think that Ben-Simon ever came to the plaintiff's office in Greenwich. He testified that Balanikas worked for M&T Bank, that Balanikas' office was in New York, and that he met with both Ben-Simon and Balanikas at the Mamaroneck property in New York. He agreed that M&T Bank's initial commitment letter for the commercial mortgage loan to KOSL indicated that M&T Bank's offices were located in New York. The plaintiff objected again to this line of questioning on relevance grounds. The defendants argued that the questioning was relevant to show that "Ben-Simon, his company, his property, the loan all originate out of the state of New York. The state of New York is the governing law . . . ." The court noted that the choice of law issue was "a question of law for the court" and that "questioning the witness on the legal issue of choice of law probably is not appropriate." The court ruled, however, that the defendant could "question him on the document,[7] it's in evidence," but should "limit [the questioning] to the contents [of the document]." (Footnote added.) The defendants proceeded to ask Horty about the term note that KOSL and M&T Bank eventually executed, which stated that "this note has been delivered to and accepted by the bank and will be deemed to be made in the state of New York . . . ."

On redirect, the plaintiff's counsel asked Horty about his meeting with Balanikas and Ben-Simon at the Mamaroneck property in New York. Horty testified that, during that meeting, he "merely provided the introduction of . . . Balanikas" and then "sat there as an observer." In response to additional questions from the plaintiff's counsel, Horty further testified that he performed his work out of the plaintiff's Greenwich office and that

_____

[7]The document in question was the M&T Bank commitment letter to KOSL dated December 16, 2019.

"[t]he entire loan production . . . [a]ll email communications, phone calls, loan packaging, analysis, everything was done at 32 Field Point Road in Greenwich, Connecticut."

Following Horty's testimony, the plaintiff rested, and the defendants called Estrada as their first witness. The plaintiff objected to Estrada being called as a witness because she was not on the defendants' witness list. The defendants countered that they were allowed to call Estrada as a rebuttal witness because the plaintiff's witness, Horty, had testified that Estrada held "the key license that the [plaintiff] needs in order to survive under either New York or Connecticut law." The court overruled the plaintiff's objection and allowed Estrada to testify.

Estrada testified that she held a loan origination license in the state of New York during all relevant times and that a loan origination license "is a residential mortgage license underneath the consumer financial protection bureau." She agreed that a mortgage loan originator license is different than a real estate broker license, which she did not hold. On cross-examination, Estrada testified that the work that she performed pursuant to the origination fee agreement with KOSL, such as "sign[ing] the fee agreement" and discussing the fee agreement and the loan application with Horty, was performed "[i]n [the plaintiff's] office . . . ."

The defendants next called Ben-Simon as a witness. Ben-Simon testified that KOSL is incorporated in New York and that both his and KOSL's business address is 875 Mamoroneck Avenue, Mamaroneck, New York. The defendants then offered KOSL's articles of incorporation as an exhibit. The plaintiff objected on relevance grounds, but the court ultimately allowed the defendants to introduce the articles of incorporation "as an exhibit showing that [KOSL is] incorporated in New York . . . ." Ben-Simon further testified that he personally resided in Scarsdale, New York during the time period from when KOSL and the plaintiff entered into the agreement through the date when the loan closed.

The defendants then asked Ben-Simon about other transactions or checking or savings accounts he had with M&T Bank and where those accounts were opened. The plaintiff objected on relevance grounds and the following exchange occurred in which the court ultimately sustained the objection:

"The Court: I think I understand. It seems to me you can almost stipulate to the facts in this case, just that you have different conclusions from them. I'm not suggesting you do that, but it seems pretty clear the factual underpinnings, but I don't understand the relevance as to these other transactions. I'll sustain the objection.

"[The Defendants' Counsel]: That's fine. . . .

"The Court: I mean, am I incorrect that the plaintiff put on a case—alleging that we provided certain services and you're defending it in part by saying regardless of whether those services were provided we're not indebted to him for that amount because of our status in New York and your status in Connecticut.

"[The Defendants' Counsel]: Our point is you don't hold a real estate broker's license which is the nexus to this transaction, but for a New York note and mortgage they're not entitled to a fee and if they can't then, yes, it is New York law that applies. Ms. Estrada just testified that [n]either herself nor [the plaintiff] held the license that was appropriate so, yeah, I mean, we could stipulate to that and cut through the rest of it.

"The Court: I think that's the dispute here and that's more something for briefing rather than facts if, you know, based on what I've heard so far, but . . . I don't know. [Counsel for the plaintiff], do you have a view on that? I mean, are you in disagreement on the facts here?

"[The Plaintiff's Counsel]: No, I think it's—this is all new to me this any personal stuff. But I don't think there's any doubt that KOSL was in New York, the building was in New York and the loan was made to [KOSL] from M&T Bank which is a national bank but was located

in New York . . . that those are facts. I also think and we included this objection that New York case law says . . . if the services are provided outside of New York it . . . doesn't matter.

"The Court: [I] understand. I read it. I understand you have a different view of the law. . . .

"[The Plaintiff's Counsel]: Right. But I would agree with you it's a briefing issue.

"The Court: Yes."

The defendants' counsel then continued with his direct examination of Ben-Simon, who testified that he never went to the plaintiff's office in Connecticut. He also corroborated Horty's testimony that he had met with Balanikas and Horty at the 875 Mamaroneck Avenue property in New York.

Following the close of evidence, the parties filed their posttrial briefs on September 25, 2023. Both parties' briefs addressed the choice of law issue and the applicability of New York Real Property Law §442-d.[8] Argument on the posttrial briefs occurred on December 11, 2023. Also on December 11, 2023, the defendants filed a motion to dismiss, arguing that the plaintiff lacked standing to prosecute the action because it was not a licensed real estate broker as required by §442-d.[9]

On April 3, 2024, the court issued its memorandum of decision and rendered judgment for the defendants on the ground that the plaintiff's claims were governed, and barred, by New York law. With respect to its decision to apply New Yok law, the court explained that, although the defendants did not give notice in their

---

[8]In their posttrial brief, the defendants also withdrew their counterclaim against the plaintiff.

[9]On February 26, 2024, the court heard argument on the defendants' motion to dismiss. In its objection to the motion to dismiss, the plaintiff again argued that New York Real Property Law §442-d was inapplicable. The court, *Golger, J.*, ultimately denied the defendants' motion to dismiss in its April 3, 2024 memorandum of decision addressing both that motion and its judgment on the merits.

initial pleadings of their intent to rely on New York law, they nevertheless "gave sufficient notice of their claims concerning New York law through their request to amend their special defenses before trial, their request for the court to take judicial notice, the statements made at trial, the evidence introduced, their posttrial memorandum and their motion to dismiss." The court further noted that "there is no dispute as to the facts at issue in this matter and the plaintiff cannot claim prejudice in addressing what is primarily a legal claim." The court then went on to perform a choice of law analysis and determined that, "even though the plaintiff in the present case was located in Connecticut for the majority of the relevant time, the dispute . . . is about a loan secured by property located in New York and fees owed by KOSL, a New York company, and guaranteed by Ben-Simon, a New York resident. As such, New York law, and [New York Real Property Law] § 442-d, apply to the present case."

On April 23, 2024, the plaintiff filed a motion to reargue/reconsider, which requested "reargument/ reconsideration of the court's conclusion that the plaintiff's claims are barred by New York Real Property Law § 442-d," and argued that "the court overlooked or failed to properly consider or address the issue of whether the plaintiff, which performed all of its services in Connecticut, performed brokerage services in New York for purposes of . . . § 442-d" and "overlooked controlling New York precedent . . . ." On May 23, 2024, the court, *Golger, J.*, summarily denied that motion.

On November 26, 2024, the plaintiff filed a motion for articulation asking the trial court to more fully articulate the factual and legal basis for its April 3, 2024 decision. Specifically, the plaintiff asked for an articulation of the "specific services, if any, the court found that the plaintiff provided in New York" and to "[e]xplain the legal reasoning underlying the conclusion that [New York Real Property Law] § 442-d applies to this case . . . ." The court issued an articulation on December 17, 2024, in which

it stated: "The plaintiff transmitted emails (including loan summaries and proposals) and telephone calls to these New York entities in furtherance of the services it provided to the defendants in New York. The plaintiff's managing director traveled to the state of New York to meet with the defendants to discuss possible loan terms with proposed lenders. [KOSL's] loan approval was issued in New York, and the loan documents were executed in New York. The plaintiff was not a licensed broker and performed these services in New York. All of these factors provide a basis for determining that . . . § 442-d applies and the plaintiff is precluded from recovering damages for the services rendered." This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff does not challenge on appeal the merits of the court's choice of law analysis. Instead, the plaintiff claims that the trial court improperly engaged in a choice of law analysis in the first instance because, in its view, the defendants did not comply with Practice Book § 10-3 (b). We disagree.[10]

"The interpretation of the rules of practice presents a question of law, over which our review is plenary." *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 671, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005). Practice Book § 10-3 (b) provides: "A party to an action who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this state shall give notice in his or her pleadings or other reasonable written notice." Although there is no appellate authority concerning what constitutes reasonable notice under § 10-3 (b), there is extensive appellate authority discussing a similar requirement that is set forth in subsection (a) of the

[10]The plaintiff presented this issue as the second issue in its brief. We address it first because the question of whether the court properly applied New York law is a threshold issue, which, if decided in the plaintiff's favor, would obviate the need to address the other issue it has raised on appeal.

same rule of practice. That subsection provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." Practice Book § 10-3 (a). Notwithstanding the use of the word "shall" in § 10-3 (a), "our courts repeatedly have recognized that the rule embodied in . . . § 10-3 [(a)] is directory and not mandatory . . . [and that] notice is the critical consideration in such instances. As this court has observed, [a]s long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of . . . § 10-3 (a) will not bar recovery." (Citations omitted; internal quotation marks omitted.) *Michalski* v. *Hinz*, 100 Conn. App. 389, 394, 918 A.2d 964 (2007).

Because Practice Book § 10-3 (b) uses the same terminology as § 10-3 (a) and serves a similar purpose—notice to the parties and the court of an intent to rely on a particular statute or the law of a foreign jurisdiction—we conclude that the rule embodied in § 10-3 (b), like the rule embodied in § 10-3 (a), is directory and not mandatory and that notice is the critical consideration. We further conclude that the case law interpreting and applying § 10-3 (a) is instructive when considering whether a party had sufficient notice of an opposing party's intention to rely on the law of a foreign jurisdiction.

Courts have interpreted Practice Book § 10-3 (a) as requiring notice that sufficiently apprises an opposing party that it intends to rely on a particular statute. A party is sufficiently apprised if the notice given provides the other party with a fair opportunity to fully litigate the issues that the invocation of a particular statute raises. In *Spears* v. *Garcia*, 66 Conn. App. 669, 670–71, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003), for instance, the plaintiffs appealed from the judgment of the trial court granting summary judgment in favor of the defendants on the ground of governmental immunity. The plaintiffs argued that their failure to plead the statute abrogating that immunity was not fatal

to their cause of action because the defendants "were sufficiently apprised"; id., 672; in accordance with the requirements of Practice Book § 10-3 (a) that the plaintiffs intended to rely on General Statutes § 52-557n[11] to abrogate the defendants' governmental immunity. Id., 670–73. This court agreed and reversed the summary judgment rendered for the defendants. In so doing, the court reasoned that, although the plaintiffs failed to plead § 52-557n in their complaint, they sufficiently apprised the defendants that the plaintiffs were relying on § 52-557n because they "relied on the statute in their memorandum of law in opposition to the motion for summary judgment and in oral argument before the trial court." Id., 676; see also *Burton* v. *Stamford*, 115 Conn. App. 47, 65–66, 971 A.2d 739 (despite failure to allege reliance on § 52-557n to abrogate governmental immunity, plaintiff sufficiently apprised defendant he was proceeding under statute by referring to statute at outset of trial and several times thereafter; "[a]s long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery" (internal quotation marks omitted)), cert. denied, 293 Conn. 912,

___

[11]General Statutes § 52-557n provides in relevant part: "Liability of political subdivision and its employees, officers and agents. Liability of members of local boards and commissions. (a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law. . . ."

987 A.2d 1108 (2009); *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 163–64, 903 A.2d 232 (2006) (finding notice of statute of limitations defense insufficient pursuant to Practice Book § 10-3 (a) "[b]ecause the plaintiffs failed at any time to identify the applicable statute on which they relied [and, thus] the court properly treated their defense as waived"); *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, supra, 85 Conn. App. 670–72 (concluding that trial court erred in refusing to consider statutory claim because defendants received sufficient notice of claim where plaintiffs referenced statute in pretrial brief and discussed it during course of trial).

Ultimately, Practice Book § 10-3 (a) concerns notice and "[t]he concept of notice concerns . . . fundamental fairness," which requires that parties be afforded "the opportunity to be apprised when their interests are implicated in a given matter." (Internal quotation marks omitted.) *Michalski* v. *Hinz*, supra, 100 Conn. App. 399. Our appellate case law pertaining to § 10-3 (a) indicates that notice of the statutory basis for a claim is sufficient when the defendant is given the opportunity to respond to the claim even if the statute is not identified in the pleadings. See *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, supra, 85 Conn. App. 671 (opposing party received notice at relevant time "when they could have responded to the allegations").

It matters not, therefore, that the defendants in this case did not give notice in their initial pleadings that they intended to rely on the law of New York to defend against the plaintiff's claims. The key consideration is whether the plaintiff was sufficiently apprised that the defendants intended to pursue that issue. In its memorandum of decision, the court concluded that, although the defendants did not give notice in their initial pleadings of their intent to rely on New York law, they nevertheless "gave sufficient notice of their claims concerning New York law through their request to amend their special defenses before trial, their request for the court to take judicial notice, the statements made at trial, the

evidence introduced, their posttrial memorandum and their motion to dismiss." We agree.

First, before trial commenced, the defendants' requests to amend their special defenses and for the court to take judicial notice remained pending. The plaintiff, therefore, had notice that there was at least a possibility that the choice of law issue would have to be addressed at trial.

Second, although prior to the presentation of evidence, the court ultimately denied the request to amend special defenses due to its concern that opening the pleadings might result in additional pleading and motion practice that could delay the trial,[12] the court also indicated at several points that it was going to need to decide the choice of law issue. For example, immediately after the court denied the defendants' request to amend special defenses, counsel for the defendants asked the court whether its denial of the request to amend amounted to "an affirmative ruling that [the court would] be applying Connecticut law to [the] case." The court responded that it would "review everything . . . when the matter is concluded. I'm going to issue a decision on this after evidence is introduced, you know, but I'm not going to

[12]We note that, under New York law, New York Real Property Law § 442-d is not a special defense that a defendant must plead in an action seeking to recover compensation for real estate brokerage services. Rather, any plaintiff seeking to recover compensation for such services must allege, and ultimately prove, that it held such a license at the time the cause of action accrued. See N.Y. Real Prop. Law § 442-d (McKinney Cum. Supp. 2026) ("[n]o person, copartnership, limited liability company or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting or negotiating a loan upon any real estate without *alleging* and proving that such person was a duly licensed real estate broker or real estate salesperson on the date when the alleged cause of action arose" (emphasis added)); see also *Kreuter* v. *Tsucalas*, 287 App. Div. 2d 50, 54, 734 N.Y.S.2d 185 (2001) (§ 442-d "requires any individual or entity seeking compensation for services rendered in connection with the sale or leasing of real estate, or negotiating a loan upon any real estate, to plead and prove that such person or entity was a duly-licensed real estate broker or sales[person] on the date when the alleged cause of action arose" (internal quotation marks omitted)).

allow your amendment." The court also addressed the plaintiff directly during the presentation of evidence and asked its counsel's view on whether it would be appropriate for the parties to address the choice of law issue and the applicability of New York Real Property Law § 442-d in posttrial briefing because the facts were not in dispute. The plaintiff's counsel agreed with the court that the parties have a different "view of the law" and also agreed that it was a "briefing issue."

Third, and as set forth more fully previously in this opinion, the plaintiff clearly had the opportunity to present evidence on the choice of law issue and the applicability of New York Real Property Law § 442-d at trial. Indeed, a substantial portion of the evidence that was introduced by the parties at trial was devoted to that very question. The plaintiff's sole witness, Horty, explained that the plaintiff is a Connecticut company domiciled in Connecticut. Horty also testified that he performed all of his work in connection with the agreement from his Connecticut office, that he met with both Ben-Simon and Balanikas in New York, and that the managing principal of the plaintiff, Estrada, held a mortgage loan originator license in New York.[13] All of this testimony was relevant solely with respect to the choice of law issue and the applicability of § 442-d.

The testimony of the two defense witnesses at trial, whom the plaintiff cross-examined, also focused on the choice of law issue and the applicability of New York Real Property Law § 442-d. Estrada testified to the license she held and that she performed all of her services in connection with the origination fee agreement in the plaintiff's Greenwich office. Ben-Simon's testimony focused on his New York residency, his New York business address, and KOSL's incorporation in New York. He further testified that he never went to the plaintiff's Connecticut office but did meet with Horty and Balanikas in New York.

[13]Estrada, when called as a witness, later conceded that the mortgage loan originator license is not the required license under New York Real Property Law § 442-d and that she did not hold a real estate broker's license in New York.

Thus, the choice of law issue and the applicability of §442-d clearly were litigated at trial. Indeed, those issues were the primary focus of the testimony offered during the course of the trial.

Fourth, and contrary to what the plaintiff argues on appeal, the court did not unfairly mislead or confuse the plaintiff about whether it would engage in a choice of law analysis by virtue of its evidentiary rulings concerning the relevance of evidence pertaining to the choice of law issue or the applicability of New York Real Property Law §442-d. For example, when the defendants' counsel questioned Horty about the Putnam County Savings Bank loan proposal and whether it was generated out of a New York office, the plaintiff's counsel objected because "the line of inquiry" was only relevant to the proposed special defense. The court responded that it all "went in" and that it could not "strike it all." The plaintiff's counsel, again, objected on relevance grounds when the defendants' counsel asked Horty: "If Mr. Ben-Simon testified that he never came to the state of Connecticut . . . would you have any reason to refute that?" Although the court sustained that objection, it also noted that "it's also speculation" and that "I'm sure that defense counsel is going to call his own witness on these questions anyways, so I'll sustain the objection." When the plaintiff's counsel objected again on relevance grounds to questions the defendants' counsel posed to Horty about whether the M&T Bank commitment letter to KOSL indicated where M&T Bank's offices were located, the court allowed the questioning on the document and specifically stated again regarding the choice of law issue: "That's a question of law for the court though, right?" Although the court sustained counsel's objection to the question the defendants' counsel asked Horty about whether Horty would agree "that the M&T Bank loan was made in conformity with New York law," it did so on the ground that it called for a legal conclusion. When the plaintiff's counsel objected to the introduction of KOSL's articles of incorporation, stating "I . . . have a standing objection to the relevance of any of this," the

court allowed the evidence "as an exhibit showing that [KOSL is] incorporated in New York." Contrary to the plaintiff's claims on appeal, therefore, the court permitted both parties to introduce evidence with respect to the choice of law question and the applicability of §442-d and did not make evidentiary rulings that misled or prejudiced the plaintiff with respect to whether it would consider those issues.

Lastly, the parties thoroughly addressed both the choice of law issue and the applicability of New York Real Property Law §442-d after the trial concluded. Specifically, the parties addressed the issue in their posttrial briefs to the court, their arguments regarding the defendants' posttrial motion to dismiss, and again in the plaintiff's motion for reargument/reconsideration.[14]

In its brief, the plaintiff argues that it was prejudiced by the defendants' late notice that they intended to rely on New York law because it "was deprived of the opportunity to utilize Connecticut procedural tools, such as filing a request to revise or a motion to strike, to conduct discovery and develop a full factual record, thoroughly research the merits of the defense (however baseless it is), identify necessary witnesses including possible expert witnesses, documents, or additional evidence for trial, and otherwise prepare for this newly introduced defense." The plaintiff fails to identify with particularity, however, precisely what evidence it would have introduced had it known sooner that the defendants would argue that New York law applied. It does not claim, for instance, that it would have produced a witness to testify that the plaintiff or its representatives held the requisite New York license or that it was deprived of the opportunity to prove that it performed the services in question outside New York. Likewise, the plaintiff fails to elaborate on its claim that it would have engaged in additional pleading practice or how doing so would have been beneficial. Nor

---

[14]We also note that the plaintiff was a party to the action in *New Capital Solutions, LLC* v. *Lawrence Woodmere Academy*, supra, Docket No. 3:20-cv-00408 (JCH), in which New York Real Property Law §442-d also was at issue.

does the plaintiff explain why expert testimony would have been permissible or necessary.

Once the defendants raised the claim that New York law applied, the only additional questions for the court to consider were the nature of the services that the plaintiff performed (a question that was largely uncontested at trial and that remains uncontested on appeal), where the services were performed, and whether the plaintiff or its representatives held a New York real estate broker's license. Moreover, if the defendants were correct that New York law applied, there would be no need for further pleading practice because, under New York Real Property Law § 442-d, the onus is on the plaintiff to plead and prove that it held the proper license when its cause of action accrued. See footnote 12 of this opinion; see also *J. L. Kislak, Inc.* v. *Carol Management Corp.*, 7 App. Div. 2d 428, 431, 184 N.Y.S.2d 315 (concluding that "the transaction in suit falls within [§] 442-d" and, therefore, "the complaint must be dismissed for failure to allege [the] plaintiff is a real estate broker duly licensed in the [s]tate of New York"), appeal dismissed, 7 N.Y.2d 719, 162 N.E.2d 636, 193 N.Y.S.2d 456 (1959), and appeal dismissed, 7 N.Y.2d 705, 162 N.E.2d 753, 193 N.Y.S.2d 1026 (1959).

For all of these reasons, we are not convinced that the plaintiff was insufficiently apprised of the defendants' contention that the plaintiff's claims were barred by New York Real Property Law § 442-d. On the day of trial, the defendants' request to amend their special defenses and for the court to take judicial notice were both pending. The court clearly stated several times throughout trial that the choice of law issue was one that the court would have to decide. The parties presented evidence on the choice of law issue and the applicability of § 442-d at trial. They also addressed the choice of law issue and the applicability of § 442-d in posttrial briefs and motions. At trial, the plaintiff even agreed with the court that the issue of whether New York law applied was a briefing issue for the court. Under these circumstances, the record

is clear that the plaintiff had adequate notice that the choice of law issue and the applicability of §442-d were before the court and that the plaintiff had a full and fair opportunity to address those issues.

Accordingly, we conclude that the trial court did not improperly engage in a choice of law analysis.

## II

The plaintiff also claims that the court erred in concluding that New York law precluded the plaintiff from recovering compensation for the services it rendered. We begin our analysis with two observations about what the plaintiff does not claim on appeal. First, the plaintiff does not claim that it held a New York real estate broker's license when its cause of action arose. Second, the plaintiff does not claim that the types of services it provided, had they been performed in New York, are the kinds of services that do not require such a license. Instead, the plaintiff contends that, even assuming arguendo that the court properly applied New York law to its claims, New York Real Property Law §442-d does not bar recovery because the services at issue were performed by representatives of the plaintiff who were at all relevant times physically located in Connecticut. We disagree and conclude that the court properly determined that §442-d bars the plaintiff's claims.

We begin by setting forth the standard of review. "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 629, 882 A.2d 98, cert. denied, 276 Conn. 925, 888 A.2d 92 (2005), and cert. denied, 276 Conn. 924, 888 A.2d 92 (2005).

Section 442-d of New York Real Property Law provides: "No person, copartnership, limited liability company or corporation shall bring or maintain an action in

any court of this state[15] for the recovery of compensation for services rendered, *in any place in which this article is applicable*, in the buying, selling, exchanging, leasing, renting *or negotiating a loan upon any real estate* without alleging and proving that such person was a duly licensed real estate broker or real estate salesperson on the date when the alleged cause of action arose." (Emphasis added; footnote added.) Section 440 (1) of New York Real Property Law , in turn, provides in relevant part that " 'real estate broker' means any person, firm, limited liability company or corporation, who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, at auction or otherwise, exchanges, buys or rents, or offers or attempts to negotiate a sale, at auction or otherwise, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate, *or negotiates or*

[15]Although the statute by its terms prohibits actions brought or maintained in any New York state court, the plaintiff does not claim on appeal that the statute does not apply because this action was commenced in a Connecticut state court. As a result, we have no occasion to address any such claim in this appeal. Nevertheless, we note that other courts have concluded that New York Real Property Law § 442-d does, in fact, apply in an action commenced in a court other than a New York state court. See, e.g., *Backar* v. *Western States Producing Co.*, 382 F. Supp. 1170, 1173–74 (W.D. Tex. 1974) (The court rejected a claim that § 442-d did not apply because the action was commenced in federal court rather than a New York state court, reasoning that "[t]he logical extension of this untenable argument is that a federal court sitting in the Southern District of New York could not apply the statute because it is not a court of (New York) state. . . . [T]his position . . . if applied would result in diametrical outcomes depending upon whether an action is brought in state or federal court. That result would be violative of both the letter and the spirit of *Erie* [*Railroad Co.*] v. *Tompkins* [304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)] and its progeny. Moreover, since New York is proud that it affords foreign principals the greatest degree of protection against the unfounded claims of brokers and finders, it is paradoxical to argue that the intention of the New York legislature was to draft a statute that could be evaded simply by filing suit in a neighboring state or in federal court." (Footnotes omitted; internal quotation marks omitted.)), aff'd, 547 F.2d 876 (5th Cir. 1977); see also *Meltzer* v. *Crescent Leaseholds, Ltd.*, 442 F.2d 293, 295 (2d Cir. 1971) (implicitly rejecting such reading of § 442-d in affirming district court's grant of summary judgment on ground that § 442-d barred claim brought by unlicensed broker to recover commission).

*offers or attempts to negotiate, a loan secured or to be secured by a mortgage, other than a residential mortgage loan . . . .*" (Emphasis added.) N.Y. Real Prop. Law § 440 (1) (McKinney Cum. Supp. 2026).[16]

It is clear, therefore, that, under New York law, one must be a duly licensed real estate broker in the state of New York to recover compensation for the types of services that the plaintiff seeks to recover in this case. Specifically, New York law requires such a license for anyone who negotiates a loan upon real estate. The plaintiff does not dispute that it provided such services to the defendants and that it did not hold such a license. Nevertheless, it claims that it did not provide those services in New York because it performed those services from its office in Connecticut. The trial court rejected that argument and concluded that New York Real Property Law § 442-d applied because "the plaintiff transmitted emails (including loan summaries and proposals) and telephone calls to . . . New York entities in furtherance of the services it provided to the defendants in New York. The plaintiff's managing director traveled to the state of New York to meet with the defendants to discuss possible loan terms with the proposed lenders. The defendant's loan approval was issued in New York, and the loan documents were executed in New York."

On the basis of our review of the record, we conclude that the trial court reached the proper conclusion. The services for which the plaintiff seeks compensation in the present case included acting as the exclusive agent for KOSL, a New York borrower, for purposes of soliciting and applying to a New York lender for a loan on terms acceptable to KOSL, which loan would be secured by KOSL's New York real property. In September 2019, the plaintiff, through its managing director, Horty, contacted Balanikas of M&T Bank via email about the proposed loan to KOSL. Thereafter, Horty and Balanikas

---

[16]Although New York Real Property Law § 440 (1) was amended after the agreement was signed; see 2022 N.Y. Laws 1703; that amendment has no bearing on the merits of this appeal. For purposes of clarity and convenience, we refer to the current revision of the statute.

engaged in electronic communications regarding the potential loan to KOSL, and Horty submitted a loan application and additional information requested by Balanikas regarding the property and Ben-Simon's financials. During this time, Horty also communicated with Ben-Simon regarding the loan application to M&T Bank. Both KOSL and M&T Bank were New York business entities whose representatives were at all relevant times physically within the state of New York. Although most of the communications that the plaintiff transmitted to KOSL and M&T Bank were transmitted electronically from the plaintiff's Connecticut office, those communications were transmitted into New York to both KOSL and M&T Bank. In addition, the trial court found that, on at least one occasion, the plaintiff's representative traveled to the state of New York to meet with Ben-Simon and M&T Bank to discuss possible loan terms.

The purpose of the licensing requirement under New York Real Property Law § 442-d "is to protect the public from inept, inexperienced, or dishonest persons who might perpetrate or aid in perpetration of fraud . . . ." *Kavian* v. *Vernah Homes Co.*, 19 App. Div. 3d 649, 650, 799 N.Y.S.2d 75 (2005). The statutory licensing provisions for real estate brokers, which regulate the activities of real estate brokers and requires them to be licensed, are penal in nature and, thus, are to be strictly construed. *See Kreuter* v. *Tsucalas,* 287 App. Div. 2d 50, 55, 734 N.Y.S.2d 185 (2001); see also *Copellman* v. *Rabinowitz*, 208 Misc. 274, 278, 143 N.Y.S.2d 496 (1955) ("[C]ourts have construed [New York Real Property Law §§ 440-a and 442-d] strictly. In some instances they have said that a broker who, while unlicensed, engaged in a single act prohibited by the statute . . . is guilty of a misdemeanor. . . . It seems clear that the [l]egislature has seen fit to preclude a recovery in the courts of this [s]tate by unlicensed brokers who negotiate within the [s]tate." (Citations omitted; internal quotation marks omitted.)); *Baird* v. *Hine*, 253 App. Div. 65, 66–67, 300 N.Y.S. 1171 (1937) (broker license was required under § 440-a where part of negotiations took place in

city where licensing was required, even when owner of real property and property itself were located in city that did not require broker license**)**.

Notwithstanding the clear purpose of the statute, which is to protect New York borrowers from inexperienced or inept brokers, and the strict construction afforded the statute, the plaintiff contends that the statute does not apply when an unlicensed broker performs brokerage services for a New York borrower through electronic communications from its offices outside New York. The plaintiff also maintains that this is true even when the New York lender and its representatives are at all relevant times physically within New York, the loan is secured by New York real property, and the loan is closed in New York. It further contends that Horty's travel to New York to introduce the borrower to the lender for the purpose of discussing loan terms was de minimis and therefore not sufficient by itself to support the court's conclusion that it performed its services in New York. We are not persuaded.

The plaintiff's proffered interpretation of New York's licensing scheme would permit unlicensed real estate brokers to perform services that clearly would be covered by New York Real Property Law § 442-d had the broker been present physically within New York so long as they perform those same services from a physical location outside New York through electronic communications with a New York borrower and New York lender. In today's modern world of technology and communications, such an interpretation would permit anyone interested in performing real estate brokerage services for New York borrowers seeking to borrow from a New York lender for the purchase of or loan upon New York real estate to evade New York's licensing requirements by establishing a physical office outside New York and performing brokerage services electronically. That interpretation, if accepted, would completely undermine the purpose of New York's licensing scheme by exposing New York borrowers to unlicensed real estate brokers who perform

brokerage services within New York from a physical location outside New York. It also would run contrary to New York's strict construction of that licensing regime. The plaintiff cites no authority to support such an interpretation.

We also find unconvincing the plaintiff's claim that Horty's travel to New York for the purpose of meeting with Ben-Simon and Balanikas, even in combination with its electronic communications to each of them in New York, was insufficient evidence for the court to have concluded that it performed real estate brokerage services in New York. The plaintiff argues that Horty merely traveled to New York for the purpose of introducing Ben-Simon and Balanikas and challenges as clearly erroneous the court's finding that "[t]he plaintiff's managing director traveled to the state of New York to meet with the defendants to discuss possible loan terms with the proposed lenders." We reject that claim for two reasons.

First, New York courts have held that New York Real Property Law § 442-d applies and bars recovery of a finder's fee even if a plaintiff merely "introduced the lender and borrower and was otherwise uninvolved in negotiating any of the deals." *Cooper* v. *Arbor Realty Trust, Inc.*, 239 App. Div. 3d 566, 566, 234 N.Y.S. 3d 103 (2025), citing *Futersak* v. *Perl*, 84 App. Div. 3d 1309, 1311, 923 N.Y.S.2d 728 (2011), leave denied, 18 N.Y.3d 943, 967 N.E.2d 690, 944 N.Y.S.2d 466 (2012), and *Minichiello* v. *Royal Business Funds Corp.*, 18 N.Y.2d 521, 527, 223 N.E.2d 793, 277 N.Y.S.2d 268 (1966), cert. denied, 389 U.S. 820, 88 S. Ct. 41, 19 L. Ed. 2d 72 (1967). Consequently, even if we accept as true the plaintiff's contention that Horty traveled to New York solely for the purpose of introducing Ben-Simon and Balanikas, we are not persuaded that such a service was de minimis for purposes of determining whether the plaintiff performed brokerage services within New York.

Second, "[w]e review questions of fact under the clearly erroneous standard. Therefore, the court's finding will be overturned only on a showing that there is no evidence in

the record to support it . . . ." (Internal quotation marks omitted.) *Angrave* v. *Oates,* 90 Conn. App. 427, 429, 876 A.2d 1287 (2005). On the basis of our review of the record, we conclude that the court's finding that Horty traveled to New York to discuss possible loan terms with Ben-Simon and Balanikas is not clearly erroneous because there was evidence in the record supporting that finding. Specifically, the record includes: (1) an email from Horty to Balanikas regarding a potential loan from M&T Bank to KOSL, a subsequent email from Balanikas to Horty suggesting that they and Ben-Simon meet at the Mamaroneck property, and an email from Balanikas to Horty following that meeting stating that "it was a great pleasure meeting with you and [Ben-Simon] yesterday . . . [w]e're excited to get working on this opportunity . . . [and] [a]s mentioned, I checked the file and will need just a few more items so I can schedule a screen for this"; (2) the transcript of Balanikas' deposition, which was admitted with the plaintiff's designations, in which he states that he met with Horty and Ben-Simon at the Mamaroneck property, which was consistent with his normal practice in evaluating potential loans; and (3) testimony from both Horty and Ben-Simon at trial stating that Horty traveled to meet Ben-Simon and Balanikas at the property to provide an introduction.

The plaintiff also points to a number of decisions in which New York courts held that New York Real Property Law § 442-d did not apply to real estate brokerage services that were rendered outside the state of New York. None of those cases stands for the broad proposition that § 442-d does not apply whenever a real estate broker performs most of its brokerage services while physically outside of New York through the transmission of electronic communications addressed to and received by a New York borrower and New York lender whose representatives remained at all relevant times within the state of New York. Instead, the decisions upon which the plaintiff relies have emphasized that the proper inquiry is not the location of the property or where the contract was executed, but where the services at issue are performed.

In *Manshion Joho Center Co., Ltd.* v. *Manshion Joho Center, Inc.,* 24 App. Div. 3d 189, 806 N.Y.S.2d 480 (2005), for instance, the case upon which the plaintiff principally relies in its brief, the plaintiff, a Japanese corporation, brought an action against the defendants to recover a commission in connection with a purchase and sale and commission agreement for condominiums located in New York. Id., 190. Pursuant to the purchase and sale agreement, the plaintiff sold the condominiums to the defendants and agreed that, following the sale, it would market the condominiums to prospective renters in Japan. See *Manshion Joho Center Co., Ltd.* v. *Nomura Suzuki Properties, Ltd.*, Docket No. 0114143/1999, 2004 WL 5510352 (N.Y. Sup. September 9, 2004). The trial court found that the unlicensed plaintiff could recover a commission for the rental marketing services, emphasizing the "significance of where the broker's services are performed" for purposes of whether New York Real Property Law §442-d applied. Id., *4. The trial court reasoned that, even though the parties executed their agreement in New York and the defendants and the condominiums themselves were located in New York, the "plaintiff established that it found renters in Japan, made reservations there and took deposits there . . . ." Id., *3. As a result, the court concluded that §442-d did not bar the action because the "services were performed solely in Japan, notwithstanding the fact that [the plaintiff] faxed information about rentals to New York . . . ." Id. On appeal, the Appellate Division of the New York Supreme Court affirmed, concluding that the defendants could not avail themselves of the protections of §442-d because "it does not apply to real estate brokerage services rendered outside of New York" and the "evidence at trial established that plaintiff, a Japanese corporation, performed services only in Japan, and thus it is inconsequential that the property marketed was in New York." *Manshion Joho Center Co., Ltd.* v. *Manshion Joho Center, Inc.*, supra, 190.

*Manshion Joho Center Co., Ltd. v. Nomura Suzuki Properties, Ltd.,* supra, 2004 WL 5510352, is easily

distinguishable from the present case. The services at issue in that case constituted the solicitation and marketing of a New York property to prospective renters in Japan. Id., *2. The plaintiff performed those services while in Japan. Id., *3. The court did not find that the plaintiff, while in Japan, marketed the property to prospective renters in New York through electronic means. Nor did that court find that the plaintiff had traveled to New York to meet with prospective New York renters. Here, by contrast, there is no dispute that the plaintiff, while physically located in Connecticut, acted as an agent for KOSL and, through electronic means, performed real estate brokerage services on KOSL's behalf by soliciting, negotiating with, and ultimately applying for a loan with a lender that was at all relevant times in New York. In addition, and, unlike the mere incidental faxes that the plaintiff in *Nomura Suzuki Properties, Ltd.*, transmitted to New York, the plaintiff's representative in this case actually traveled to New York to attend a meeting at which Ben-Simon met with the lender that the plaintiff solicited on the defendants' behalf.

The plaintiff's reliance on *Mitra* v. *Global Financial Corp.*, Docket No. 09-CV-4387 (DLI) (RLM), 2010 WL 1529264 (E.D.N.Y. April 15, 2010), is no more availing. In that case, a resident of New York brought an action to enjoin the enforcement of an arbitration judgment requiring them to pay the defendant a commission for brokerage services on the ground that it would violate New York Real Property Law §§ 440-a and 442-d because the defendant was not licensed to act as a mortgage broker in New York. Id., *1. The United States District Court for the Eastern District of New York granted the defendant's motion to dismiss the complaint on res judicata grounds, but also observed that, even if the action was not barred by res judicata, "this action must still be dismissed because . . . §§ 440-a [and] 442-d only apply to services rendered in the state of New York. . . . [The] [p]laintiff's complaint contains no allegation that [the] defendant performed its brokerage services in New York. While his sur reply letter points out that

the defendant participated in multiple communications concerning the transaction while [the] plaintiff was in New York, these contacts are de minimus at best. The record indicates that the overwhelming majority of the services were performed by [the] defendant from its office in Florida." (Citations omitted.) Id., *2.

Although it is clear from *Mitra* that the borrower was located in New York, the subject hotel was located in New York, and the broker was located outside of New York; see *Mitra* v. *Global Financial Corp.*, Docket No. 09-CV-4387 (DLI), 2010 WL 5095797 (E.D.N.Y. October 6, 2010); what is unclear from that decision is where the lender was located, where and through what means the negotiations with that lender occurred, or the extent to which any of that factored into the court's determination. Moreover, and unlike the contacts at issue in *Mitra*, the contacts between the plaintiff, the defendants and M&T Bank in this case were anything but de minimis. The plaintiff in this case transmitted extensive communications to the defendants and M&T Bank in New York. Those communications, in combination with the meeting that took place in New York among Horty, Ben-Simon and Balanikas, constitute a substantial share of the services for which the plaintiff seeks compensation in this case.

As a result, and for all of the foregoing reasons, we conclude that the trial court did not err in concluding that New York Real Property Law §442-d barred the plaintiff from recovering on its claims.

The judgment is affirmed.

In this opinion the other judges concurred.